447 So.2d 606 (1984)
Ronnie INSECO, Plaintiff-Appellant,
v.
CAMBRIDGE MUTUAL FIRE INSURANCE COMPANY, Defendant-Appellee.
No. 83-608.
Court of Appeal of Louisiana, Third Circuit.
March 7, 1984.
Writ Denied April 23, 1984.
*608 Michael F. Shannon, Alexandria, for plaintiff-appellant.
Gist, Methvin, Hughes & Munsterman, David A. Hughes, Alexandria, for defendant-appellee.
Before DOMENGEAUX, GUIDRY and STOKER, JJ.
GUIDRY, Judge.
Plaintiff, Ronnie Inseco, filed suit against Cambridge Mutual Fire Insurance Company, the liability insurer of Rex Lofton, seeking damages for injuries sustained as a result of a fall from the roof of the Lofton house. After trial on the merits, the trial court rendered judgment dismissing plaintiff's demands at his cost. Plaintiff appeals. Defendant neither appeals nor answers the appeal.

FACTS
On March 3, 1982, plaintiff was visiting the residence of Rex Lofton when a fire started in the attic. Plaintiff, assisted by a neighbor, succeeded in extinguishing the fire with a garden hose through an attic door in the garage. The fire department had been summoned but had not yet arrived. Mr. and Mrs. Lofton were then in and out of the house, attempting to remove their personal effects from the house. Several neighbors had gathered. Plaintiff then noticed that there was smoke still coming from the back of the roof. Afraid that the fire would start again and possibly ignite the trees or a neighboring house, he decided to wet the roof down. Having determined that the major portion of the fire was to the rear of the house, he decided to climb up the front of the house which would be cooler. Two of the neighbors boosted the plaintiff up onto the front part of the roof. However, the roof was too hot and the plaintiff was unable to hold on, falling to the ground face down. The fire department arrived immediately thereafter. As a result of the fall, plaintiff sustained the fracture of five ribs and a crushed fracture of a lumbar vertebrae.
Plaintiff alleges that the fire was a result of defective or faulty electrical wiring; that Rex Lofton's negligence or the wiring defect was the legal cause of his injuries; and, that defendant is therefore liable under LSA-C.C. Articles 2315, 2317 and 2322.
On the other hand, defendant contends that plaintiff failed to prove by a preponderance of the evidence any negligence on the part of defendant's insured or any defect or ruin of the building such as to impose liability on the defendant. In the alternative, defendant asserts fault of the plaintiff, contributory negligence or assumption of the risk, as a total or partial bar to plaintiff's recovery. The parties also contest the applicability of the "rescuer doctrine" to this case.
In dismissing plaintiff's suit, the trial judge made no definitive finding as to the existence of a defect in the building or as to negligence on the part of Rex Lofton, concluding that, even if the existence of a defect be assumed, Mr. Inseco was not entitled to rescuer status and that he had assumed the risk.
*609 The basis of plaintiff's allegations of defendant's liability under both LSA-C.C. Arts. 2315, 2317 and 2322 is that the insured building contained a defect, i.e., faulty electrical wiring which posed an unreasonable risk of harm to plaintiff,[1] and that plaintiff's injuries were a result of encountering that risk.
As proof of the defect in the wiring, plaintiff offered the testimony of Rex Lofton to the effect that for some time prior to this fire, the Loftons had experienced problems with the electrical system, including the dimming of lights, fluctuating temperatures in the electrical oven and the light bulbs frequently burning out prematurely. This testimony was corroborated by plaintiff. Mr. Lofton also testified that he had called in an electrician to diagnose the problem. The electrician was apparently unable to pinpoint the problem on the first visit and Lofton decided it would be too expensive to remedy the problem. In addition, several of Mr. Lofton's neighbors testified that they had not experienced similar difficulties.
Mr. Andrew Moore, accepted by the court as an expert in electrical engineering, stated that the problems described by Mr. Lofton could only indicate a loose connection in a neutral or hot wire, which defect could cause a fire. Mr. Moore further testified that since the neighbors were not experiencing similar problems, the problem was not in the distribution line or in the power plant, but existed either in the service line, which connects the house to the distribution line, or in the electrical wiring in the house itself.
Mr. Lofton further testified that, after the fire on March 3, 1982, the utility company replaced the service line and the meter in his house. He nonetheless continued to experience the same difficulties and subsequently, in August of 1982, a second fire occurred which totally destroyed the residence.
Plaintiff submits that the above circumstantial evidence is sufficient proof of a defect or negligence on the part of defendant's insured.
"The plaintiff in a civil action bears the burden of proving by a preponderance of the evidence every element of fact essential to his recovery. Proof which establishes only possibility, speculation or unsupported probability is not sufficient to establish a claim." (citations omitted). Jennings v. City of Alexandria, 394 So.2d 718 at 721 (La.App. 3rd Cir.1981).
To meet the burden of proof required in civil cases, circumstantial evidence need not negate all other possible causes, it need only prove the causal relationship sought to be proved to be more probable than not. Vonner v. State through Dept. of Public Welfare, 273 So.2d 252 (La.1973). In A & M Pest Control Service, Inc. v. Fejta Construction Co., Inc., 338 So.2d 946 (La.App. 4th Cir.1976), the court, in effect, held that the test of sufficiency in a circumstantial evidence case is that, taken as a whole, such evidence must exclude other reasonable hypotheses with a fair amount of certainty but it need not negate all other possible causes.
We think that the evidence as a whole establishes that the fire more probably than not resulted from a defect in the electrical wiring in the Lofton residence. The fact that the fire started in the attic of a private residence limits the reasonable hypotheses of causation.[2] The only other reasonable hypothesis of causation offered in opposition to plaintiff's proof was the possibility that the wiring defect existed in the service line rather than the residence and thus, was the responsibility of the utility company and not defendant's insured. *610 We find that the evidence as a whole excludes this hypothesis with a fair amount of certainty. After the service line was replaced, the Loftons continued to experience the same electrical difficulties, indicating that the defect was confined to the Lofton's residence. We therefore conclude that plaintiff has established by a preponderance of the evidence that the cause of the fire was a defect in the electrical wiring in the Lofton's residence. To the extent that the trial court may have found otherwise, we find such conclusion to be clearly erroneous.
For the following reasons, we also conclude that the defect was the legal cause of plaintiff's injuries. LSA-C.C. Art. 2317 provides in part that we are responsible not only for the damage occasioned by our own act, but also for damages occasioned by things in our custody. LSA-C.C. Art. 2322 further defines the application of the general principle of LSA-C.C. Art. 2317 to the owner of a building. Entrevia v. Hood, 427 So.2d 1146 (La.1983). LSA-C.C. Art. 2322 provides as follows:
"The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."
In Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1978), the Supreme Court held that under LSA-C.C. Art. 2322 the owner of a building has a non-delegable duty to keep his building and its appurtenances in repair so as to avoid an unreasonable risk of injury to others. Id at 1292.
In order to recover in strict liability under LSA-C.C. Arts. 2317 and 2322 against the owner of a building, the injured person must prove that the building or its appurtenances posed an unreasonable risk of injury to others, and that his damage occurred as a result of this risk. Upon proof of these elements, the owner is responsible for the damages, unless he proves that the damage was caused by the fault of the victim, by the fault of a third person, or by an irresistable force. The owner is absolved from his strict liability neither by his ignorance of the condition of the building, nor by circumstances that the defect could not easily be detected. Entrevia v. Hood, supra.
It is clear that defective electrical wiring poses a risk of grave injury to persons and property by fire. Electrical fires are very common and the harm threatened is grave. It is also clear that the fire was a cause in fact of the plaintiff's injuries. The crucial determination in this case is whether the duty imposed upon defendant's insured was intended to grant protection against risks to persons in plaintiff's situation.
The duty to avoid the risk of fire offers protection to persons who are killed or injured in an adjoining building when fire spreads to that building, see Boudreaux v. American Ins. Co., 262 La. 721, 264 So.2d 621 (1972), as well as to adjoining owners who are injured while attempting to preserve their property from damage or destruction by the fire. See Ayala v. Bailey Electric Company, Inc., 318 So.2d 645 (La.App. 4th Cir.1975), writ granted, 322 So.2d 770 (La.) dismissed on joint stipulation. We opine that this rule affords protection as well to a person injured while prudently acting to preserve lives or property of others and even the life and property of the tortfeasor himself.[3] The question then is whether the defendant's responsibility should extend under the circumstances of this particular case.
The exact scope of protection to be afforded against risks created by violation of a duty depends upon the facts and circumstances of each case.
In the present case, the trial judge, in determining that plaintiff was not entitled to rescuer status, relied on certain facts in his written reasons for judgment that we find are unsupported by the record. He determined that the fire was extinguished at the time that the plaintiff *611 climbed onto the roof. The record does not support this conclusion. Although plaintiff had extinguished the flames of the fire, the uncontradicted testimony of plaintiff and Mr. Lofton was that smoke was still pouring out from the back of the roof, indicating that the fire was still smoldering. He also determined that Mrs. Lofton and her son had apparently found a place of safety. The uncontradicted testimony of Mr. Lofton was that at the time plaintiff climbed onto the roof, he and Mrs. Lofton were in and out of the house, removing their personal effects. Additionally, plaintiff testified that he was also concerned that if the flames started back up again, they might ignite the trees or neighboring houses. We therefore conclude that the record indicates that plaintiff was acting to preserve the lives and property of the tortfeasor and others endangered by the fire.
We also note that the issue of rescuer status was improperly posed by the trial judge as follows:
"Did plaintiff have a duty or obligation to climb on the roof to determine if the fire was completely out?"
This is an improper inquiry because the special treatment afforded the rescuer does not arise out of legal considerations but out of moral considerations.[4]
"Where the argument is made that a party, plaintiff or defendant, could have ignored all cries for help or dictates of humanity and remained safe and sound, courts have a distinct tendency to look with favor on "white knights", provided their conduct is not too quixotic. The moral answer is clear: it is good that he went to the rescue even though he had no duty to do so. The legal position to a large extent reflects morality. The rescuer is not to be viewed as an officious intermeddler nor as one who assumed a risk." La.Civil Law Treatise, 12 § 282.
We find that there is an ease of association between defective electrical wiring and the risk of fire and the additional risk that an invitee will be injured in attempting to preserve the lives and property endangered by that fire.[5]
The remaining question is whether the plaintiff in this case was injured as the result of encountering the risk posed by the defect or whether he was injured as the result of his own fault. This inquiry encompasses the question often posed as part of the rescuer doctrine, that is, whether the actions of the rescuer are wanton or must be condemned by reason.
On this issue, this defendant has the burden of proof to show fault on the part of plaintiff. We find that the defendant failed in that burden. We believe that plaintiff's actions, when viewed in light of the emergency and thus the necessity for quick action, which was the result of the risk posed by the defect, were prudent. Plaintiff's actions were justified by the fact that he acted for the purpose of saving property and life from imminent danger.
Plaintiff was confronted with the emergency of the fire. He was notified of the fire by Mrs. Lofton. In response to her panic and distress, plaintiff acted swiftly and prudently to extinguish the flames. Aware that the fire department had not yet arrived and reasonably believing that lives were still in peril, he determined to cool down the roof to protect against further damage. The emergency had not died with the flames. A smoldering fire can easily reignite. In attempting this action, he did *612 not place himself in such a position that he could not escape without injury. He considered the alternatives in the short time required by the circumstances with those persons who assisted him and decided to climb the front of the house, where no flames or smoke were visible. The intense heat of the roof was not apparent. Plaintiff testified that had he realized the front portion of the house was as hot as it was, he would not have attempted to climb same. We therefore are not otherwise persuaded by the fact that as a "kid", plaintiff had had some training as a fire fighter for a volunteer fire department.
In sum, we find that defendant's insured's building posed an unreasonable risk of harm to plaintiff, i.e., the electrical wiring was defective; plaintiff was injured by encountering that risk; and, the damage occasioned was not caused by victim fault.
Plaintiff sustained the fracture of five ribs and the fracture of a lumbar vertebrae. He was hospitalized for five days following the accident and was confined to bed after release from the hospital for a total of three months. He incurred $2,165.10 in medical expenses. We consider a general damage award of $10,000.00 to be fair for the pain and discomfort suffered by plaintiff as a result of these injuries.
In December of 1982, plaintiff was examined by Dr. Don Joffrion, an orthopedic surgeon. His report, which was made a part of the record, indicates that plaintiff made a satisfactory recovery and was without need of further treatment. For that reason, plaintiff's claim for future lost wages and future medical expenses are denied.
Plaintiff is self-employed and works part-time as a musician-drummer. The only evidence of plaintiff's lost wages was his own testimony. Plaintiff testified that his work was not steady but estimated that he made $300.00 to $400.00 a week. We think that the record justifies an award of $2400.00 in lost wages.
Accordingly, the judgment appealed from is reversed and set aside and there is judgment rendered in favor of plaintiff, Ronnie Inseco, and against defendant, Cambridge Mutual Fire Insurance Company in the sum of $14,565.10 with legal interest from date of judicial demand until paid, and all costs of these proceedings.
REVERSED AND RENDERED.
NOTES
[1] In asserting liability under LSA-C.C. Art. 2315, plaintiff contends that defendant knew or should have known of this unreasonable risk of harm but failed to protect against it.
[2] It is not reasonable that the fire resulted from the act of vandals, see Toussant v. Guice, 414 So.2d 850 (La.App. 4th Cir.1982), nor by some act of a third person, see Carriere v. Olivier, 432 So.2d 1089 (La.App. 3rd Cir.1983), writ denied, 438 So.2d 570 (La.1983); nor by some instrumentality outside of defendant's control. See Blue Ridge Ins. Co. v. Belle Alliance Homes, 408 So.2d 417 (La.App. 1st Cir.1981).
[3] See Kaplan, Recovery by the Rescuer, 23 L.L.R. 609 (1968) where rescuer's recovery is discussed under the theory of negotiorum gestio.
[4] Indeed, the existence of a legal duty on the part of the rescuer, such as in the case of a fireman, involves altogether different moral, social and economic considerations which may compel a different result. See Thompson v. Warehouse Corporation of America, Inc., 337 So.2d 572 (La.App. 4th Cir.1976).
[5] "The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man ... Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable." Cardoza, C.J., in Wagner v. International R. Cor. (1921), 232 N.Y. 176, 133 N.E. 437, 19 A.L.R. 1.