JOHN S. COVINGTON, Judge.
Defendants M.J. Strother and his insurer, General Accident & Assurance Company (General), suspensively appeal the trial court judgment finding them liable for the damages sustained by fourteen plaintiffs when a “flea market” was destroyed by fire during the night of December 21, 1981. Eight plaintiffs devolutively appealed the trial court’s judgment granting a directed verdict in favor of Frank G. Smith and his insurer, General Accident & Assurance Company, at the conclusion of plaintiffs’ case.
Fourteen tenants of M.J. Strother and R.D. Bozeman, operators of a “flea market” on Airline Highway in Baton Rouge, filed twelve separate lawsuits against: (1) Frank G. Smith, the owner of the building and Strother and Bozeman’s lessor; (2) Smith’s insurer, General; (3) Strother and *268 Bozeman and their insurer (also General), alleging they sustained damages when the building housing the “flea market” was destroyed by fire during the early morning hours of December 21, 1981. The suits, originally assigned to several divisions of the district court, were consolidated on January 17, 1983, solely for the purpose of trying the issue of liability. Defendant Bozeman received a general discharge in Bankruptcy on September 23, 1982.
The first trial by jury ended in a mistrial. The second trial, also before a jury, was tried on January 3, 4 and 9, 1985. At the conclusion of plaintiffs’ case, on motion of defendants Smith and his insurer (General), a directed verdict of no liability was granted. One plaintiff and defendants announced at the outset of the trial, out of the presence of the jury, that a compromise settlement had been reached. At the conclusion of Strother’s and General’s case, but before the court completed instructing the jury as to the law, counsel stipulated out of the jury’s presence and on the record that in two specified additional suits the parties had reached compromise agreements.
Counsel for appellants Strother and General informed this court, by letter dated July 31, 1986, that all of the suits except Billy J. Meyers’ suit, Docket No. CA 85 1002 of this court, “have been settled, or tried with the parties agreeing to the trial Court’s results.” The letter, by way of explanation, states that “After the liability trial, the cases were deconsolidated and returned to the original ... divisions for individual determinations of quantum.” Additionally, counsel’s letter informed the court that General’s assertion in its first assignment of error, that the trial court erred in casting Strother in judgment in suits which either did not name him as a defendant or in which he was named but never served or cited, is inapplicable to the Meyers suit “and need not be addressed by this Court.”
FACTS
Smith leased the premises to Strother and Bozeman on February 10, 1981, utilizing a three page printed “lease of commercial property (gross)” form. The lease provided, inter alia, that: (1) the premises were “to be used as a Flea Market for the sale of merchandise”; (2) lessees Strother and Bozeman could not “make any additions or alterations whatever without written permission”; and (3) lessees assumed “responsibility for the condition of the premises and Lessor will not be responsible for damages caused by ... any vices or defects of the leased property, or the consequences thereof, except in the case of positive neglect or failure to take action toward the remedying of such defects within reasonable time after having received written notice from Lessee[s] of such defects and the damage caused thereby. Should Lessee[s] fail to promptly so notify Lessor, in writing of any such defects, Lessee[s] will become responsible for any damage resulting to Lessor or other parties.”
Before testimony began, all parties stipulated, inter alia, that: (1) all plaintiffs-ap-pellees in these consolidated appeals occupied space leased from Strother and Boze-man at the Flea Market; and (2) the December 21, 1981 fire totally destroyed the flea market building and its contents.
Defendant Smith, called on cross-examination, testified that he built the building in 1963 to house Anchor Marine’s boat showroom and repair facilities. He stated that he was aware Strother and Bozeman leased the property for the purpose of operating a flea market; that he went to the flea market “possibly” fifteen times during the ten months it was in operation “as a customer” with his wife, daughter, or a friend, rather than as a landlord to inspect the premises. Smith further testified that neither Strother nor Bozeman or any of their sub-lessees ever communicated to him that they were having electrical problems in the building. Mr. Strother, called on cross-examination by plaintiffs, corroborated Smith’s testimony that no electrical problems were communicated to him.
ASSIGNMENTS OF ERROR
Defendants-appellants, Strother and General, assign as error (1) the jury verdict *269 finding Strother liable because “the evidence ... failed to exclude all reasonable causes of the fire not attributed to or the responsibility of M.J. Strother,” (2) the trial judge’s striking the defenses of contributory negligence and assumption of the risk, and (3) the trial judge’s “failing to propound specific interrogatories to the jury.”
Plaintiffs-appellants assign as error the trial judge’s granting Smith and his insurer’s motion for a directed verdict of no liability because (1) reasonable minds could have differed as to whether Smith knew or should have known of electrical system defects or vices, (2) he found as a fact that Smith neither knew nor should have known about the electrical system defects or vices, and (3) the trial judge required plaintiffs to prove Smith knew or should have known of the defects as a prerequisite to finding liability based on La.C.C. art. 2322, which “has no such requirement.”
DIRECTED VERDICT FOR SMITH AND HIS INSURER
The trial judge alluded to La.R.S. 9:3221 in determining “what the duty is of an owner of property who has taken the steps to protect himself contractually with his tenant, to confect a written lease which contains the provisions allowed by that statute.” The judge continued, as follows:
.... I would find that the duty of such a tenant is the same as that in the contract. ... [I]n order to be negligence, it must be something that he [Smith] knew or should have known, could be a defect that could result in the loss. It’s a foreseeability type duty, as it is a foreseeability type contractual obligation. And I find that reasonable minds could not differ based on the evidence I have heard in this case, that Mr. Smith knew or should have known there was a defect in this building that could have caused this loss because I believe that contractual obligation and the duty that he may have had has to be looked at from the point of view of Mr. Smith before the fire and not with the benefit of hindsight.... But there is no evidence in the record that Mr. Smith knew about [the breaking of circuits because of apparent overload, replacement of fuses, flickering of lights] ... And if you remove the ... knowledge of the fire, ... there is no way that reasonable minds could differ that he should have foreseen, merely from leasing the building and knowing that it was going to be used as a flea market, that it would burn down, that this risk would occur.
Smith and his insurer, appellees, assert in their brief the applicability of La.R.S. 9:3221 and the assumption of responsibility of the condition of the building by Smith’s lessees. They further argue that:
[I]n order for the plaintiffs to prevail [against Smith] they were required to prove that Frank Smith knew or should have known of a defect in the building that was a cause of their damages and that he had failed to remedy the defect within a reasonable time....
[T]he mere knowledge of the intended use of the building does not indicate that the electrical system required upgrading....
... [T]he lessees [Strother and Boze-man], and not Smith, controlled and supervised the conversion of the building to use as a flea market. There is no evidence of inadequacy of the electrical system in the building as delivered.
... Mr. Smith did not know if Boze-man intended to make any changes in the electrical system. Strother corroborated Smith’s lack of knowledge concerning the details of the conversion.
The conversion of the building was a job that was permitted and inspected by the city. Mr. Smith simply had no duty to conduct further inspection....
Additionally, appellees Smith and General assert that the “precise purpose of [La.] R.S. 9:3221” is to permit the owner of a building to contract away the responsibility imposed by La.C.C. art. 2322, citing Tassin v. Slidell Mini-Storage, Inc., 396 So.2d *270 1261 (La.1981), House v. Thompson, 452 So.2d 1195 (La.App. 1st Cir.1984), other case law, and Comment, Article 2322 of the Civil Code and the Liability of the Owner of an Immovable, 42 Tul.L.R. 178, 187 (1967).
In Tabor v. Doctors Memorial Hospital, 501 So.2d 243 (La.App. 1st Cir., October 15, 1986), this court stated at page 245 of the Opinion, that La.C.C.P. art. 1810 is “the authority for granting a directed verdict” and elaborated, in part, as follows:
Motions for a directed verdict and motions for a judgment notwithstanding the verdict generally are derived from the Federal law, and Louisiana derives its jurisprudential test for the circumstances under which these motions should be granted from Boeing Company v. Shipman, 411 F.2d 865 (5th Cir.1969), which announces the basic test later used in Campbell v. Mouton, 373 So.2d 237 (La. App. 3d Cir.1979).
In Boeing Company v. Shipman, 411 F.2d 365 (5th Cir.1969) (en banc), the United States Court of Appeals for the Fifth Circuit, per Ainsworth, Circuit Judge, stated the guiding principle, adopted by Tabor and Campbell, supra, in the following language:
On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence — not just that evidence which supports the non-mover’s case — but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.
411 F.2d at 374-375. (Emphasis supplied.)
The United States Court of Appeals for the Fifth Circuit, as recently as this year, followed the principle laid down in Boeing Co. v. Shipman, supra, in affirming the District Court’s denial of defendant’s motion for judgment notwithstanding the verdict. Thomberry, C.J., excerpted the principle quoted above and reasoned further, in part, as follows:
In other words, a district court should deny a motion for judgment n.o.v. unless the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict, (citation omitted.)
Following the Boeing mandate, it is clear that the district court properly denied Texaco’s motion for judgment n.o.v. ... Because Knight offered substantial evidence that he would suffer future lost earnings, the district court properly denied Texaco’s motion for judgment n.o.v.
Knight v. Texaco, Inc., 786 F.2d 1296, 1298-1299 (5th Cir.1986.)
In Lincecum v. Missouri Pacific Railroad Co., 452 So.2d 1182 (La.App. 1st Cir. 1984), we made the following pronouncements:
A trial judge has much discretion in determining whether or not to grant a motion for a directed verdict. La. Code Civ.P. art. 1810; ... In deciding whether or not to grant a motion for directed verdict ... the court should consider all *271 of the evidence in the light most favorable to the party opposing the motions. A court should not grant the motion ... unless the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable minds could not arrive at a contrary conclusion, (citation omitted.)
452 So.2d at 1186.
La.R.S. 9:3221, enacted in 1932, authorizes the owner of “premises” to shift responsibility, via lease contract, for the condition of the leased premises, thereby exonerating the owner-lessor from liability “for injury caused by any defect” in the leased premises which may be sustained by “the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.”
In the lease contract in the present case lessees Strother and Bozeman expressly assumed the responsibility authorized by La. R.S. 9:3221. The testimony of the owner-lessor (Smith) and one lessee (Strother), under cross-examination, were in agreement that lessees never notified Mr. Smith, orally or in writing, that lessees’ sub-lessees were complaining about such manifestations of electrical problems as dimming of lights, power outages only in the leased building, fuses blowing and circuit breakers tripping, some or all of which occurred quite often during the hours the Flea Market was open. Mr. Smith testified that during the occupancy of the building by Anchor Marine, he never received any complaints about the adequacy of the electrical system. Additionally, lessees made modifications to the electrical system both before and after the building was put to use as the Flea Market. The modifications included increasing the incoming electrical service capacity and adding from fifty to one hundred outlets for use by the Flea Market’s tenants in displaying their wares. When Mr. Smith went to the Flea Market, he was there as another customer rather than as an inspecting landlord. Moreover, he was not in the Flea Market when any of the electrical system problems manifested themselves.
After thoroughly reviewing all the testimony and documentary evidence, considered in the light most favorable to plaintiffs, we find no merit to plaintiffs-appellants’ assignment of error. We hold that the trial judge properly granted a directed verdict exonerating the lessor, defendant Smith, and dismissing him and his insurer.
DEFENDANT-LESSEE’S NEGLIGENCE
Mr. Strother and General assert that the jury verdict finding Strother liable is erroneous because “plaintiffs entire case was based on circumstantial evidence”. Other “reasonable causes of the fire, which were not within the care, custody, control or responsibility of M.J. Strother, were presented to the jury.” They base their assertion in large part on the expert testimony offered on defendants’ behalf by Leonard Adams, Ph.D., a retired professor of Electrical Engineering. Defendants rely on Blue Ridge Insurance Co. v. Belle Alliance Homes, Inc., 408 So.2d 417 (La.App. 1st Cir. 1981) to support their conclusion that “plaintiffs have not excluded all other reasonable causes of the fire,” reasoning that the building “was so badly damaged by the fire that it was impossible to determine the cause of the fire.”
Plaintiffs-appellees cite INSECO v. Cambridge Mutual Fire Insurance Co., 447 So.2d 606 (La.App. 3d Cir.1984), writs denied, 449 So.2d 1349 and 1350 (La.1984), in support of their position that the jury was not manifestly erroneous in finding Strother liable. In INSECO, a house fire case, the court after briefly stating the operative facts, stated the requisite burden of proof as follows:
To meet the burden of proof required in civil cases, circumstantial evidence need not negate all other possible causes, it need only prove the causal relationship sought to be proved to be more probable than not. (citations omitted.) ... [T]he test of sufficiency in a circumstantial evidence case is that, taken as a whole, *272 such evidence must exclude other reasonable hypotheses with a fair amount of certainty but it need not negate all other possible causes.
447 So.2d at 609. (Brackets supplied.)
An appellate court should not disturb factual findings of the trier of fact, be it judge or jury, in the absence of manifest error. Canter v. Koehring Co., 283 So.2d 716 (La.1973); and Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). “[T]he appellate review of facts is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court; there must be a further determination that the record establishes that the finding is not clearly wrong (manifestly erroneous).” Arcen-eaux, supra, at 1333. “[T]he reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s [or jury’s] better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.” Canter, supra, at 724. (Bracketed material supplied.)
Our review of the record fails to disclose any manifest error in the jury’s finding Strother guilty of negligence in failing to correct electrical system deficiencies resulting in the loss of the building and its contents by fire. Accordingly, we find no merit to defendants-appellants’ first assignment of error.
CONTRIBUTORY NEGLIGENCE/ASSUMPTION OF RISK
Strother and General argue in brief that the trial judge abused his discretion in striking the affirmative defenses of contributory negligence and assumption of the risk, both pleaded in an amended answer which the court permitted defendants to file shortly before the second jury trial began. They argue that the trial court’s failure to charge the jury on contributory negligence and assumption of the risk was reversible error.
Prior to the testimonial phase of the trial, and out of the presence of the jury, the trial court stated, in ruling on the status of the amended answer, in pertinent part, as follows:
... [T]he Court ... signed the amend: ed answer without the presence of the plaintiffs and gave them no opportunity to oppose the amendment under the mistaken belief that there was no opposition to it. I have been informed that there is opposition to it and ... analysis of the two amended answers shows that the defendants have not pled any specific facts which would constitute contributory negligence. The plaintiffs point out that in answers to interrogatories they gave no specific evidence of contributory negligence. In their attempted amendment, they gave no specific evidence of contributory negligence and upon request by the Court, counsel was asked for specific information that could be developed and the Court was provided with none_ In view of that background of this case, I’m going to set aside the order allowing the amendment ... [but only insofar as the plea of contributory negligence is concerned.] (Emphasis and brackets supplied.)
The trial judge stated ample reasons for striking the defense of contributory negligence from the amended answer which was permitted in an ex parte order signed because of the mistaken belief plaintiffs did not oppose it. We agree with the trial judge’s statement that it was discretionary for him to permit the amendment and his discretion extended to undoing the permitted amendment. Counsel for defendants, in response to the judge’s inquiry whether defendants hoped to establish the defense *273 of contributory negligence “with cross-examination of the various plaintiffs,” responded “That’s essentially correct, other than the fact that all of the plaintiffs were using electrical devices of one type or another.”
The trial judge gave lengthy instructions to the jury, including the following:
One of the defenses which the law permits a person in custody of a thing which possesses an unreasonable risk of harm to raise is that ... the injured person was ... at fault and ... helped cause his own injury. If you conclude that the plaintiffs’ conduct in this instance was a substantial deviation from conduct we would normally expect of reasonably prudent persons or that the plaintiffs fully understood the dangers which were involved and then voluntarily exposed himself (sic) to that danger, you must return a verdict for the defendant. ...
******
... One of the defenses which the law [La.C.C. art. 2317] permits the lessor of defective premises to raise when sued by the lessee ... is that the lessee himself was at fault and thereby helped cause his own injury. The fact that the lessee has knowledge of the generally defective condition of a portion of the premises does not constitute such fault if it reasonably appears that he might safely use it with the exercise of due care. If however, the lessee was aware of the defect causing the injury and it was such as to indicate to a reasonable person that use of the defective portion was an apparent or imminent danger and the lessee nonetheless proceeded to use that portion of the premises and was injured, then you must return a verdict for the defendant. ... Under theories of defenses that the defendant wishes to urge, he has the burden of proving his defenses, and they are both by the same standard, by a preponderance of the evidence.
(Brackets and elipsis supplied.)[1]
Whether the trial judge erred in striking the defense of contributory negligence which defendants pleaded in an amended answer is purely academic and we need not decide that point because the trial judge instructed the jury both as to contributory negligence and assumption of the risk. The above quoted instructions, though not labeled as such, speak to the substance of both defenses. Defendants-appellants are mistaken in their statement that the trial judge struck the assumption of risk defense pleaded in the amended answer. It is true that the trial judge indicated that he was striking the defense of assumption of risk but obviously he did not.[2] This assignment of error is without merit.
TRIAL JUDGE’S FAILURE TO PROPOUND SPECIFIC INTERROGATORIES
Under this assignment of error defendants-appellants illogically argue that “the trial judge refused to charge the jury on the issues of contributory negligence and assumption of the risk,” an assertion not borne out by the excerpt from the trial court’s jury instructions. Counsel states in brief that defendants-appellants “objected to the trial judge’s decision to refuse to present specific interrogatories to the jury [and] this objection was made before the jury retired to consider a verdict in accordance with [La.C.C.P. art.] 1793.”
The trial judge instructed the jury concerning possible verdicts and the mechanics to be employed in reaching a verdict as follows:
*274 In this case you are being asked to return a general verdict. This simply means that you are asked to return a verdict either for the plaintiffs or for the defendants. Remember, at the very beginning I described the other option, the series of questions that are called interrogatories that you could be asked to answer and from which the Court would fashion a verdict.
Normally, you would indicate an amount if you ruled for the plaintiff. But since the amount is not an issue [in this trial], you only have to answer a simple question yes or no. And the question is “We, the members of the jury, find that M.J. Strother and General Accident Fire & Life Assurance Corporation, Ltd., liable or legally at fault to the plaintiffs for the losses suffered by this fire. Yes. No.” Yes or no. That question— when nine of you agree yes or when nine of you agree no, you can return a verdict. (Brackets supplied.)
Defendants-appellants’ objections or challenges to the trial judge’s instructions and rulings on the various defenses were stated by counsel before deliberations began, as follows:
[W]e ... object to the striking of contributory negligence and assumption of risk defenses and failure to include these on the jury verdict form.... We object to the failure to propound more specific questions to the jury....
Early in the jury instructions, the trial judge told the jury, inter alia, that “[another thing that has simplified your job is the jury verdict form that we have come up with” and elaborated, in part, as follows:
Now, to explain how simple it is, let me explain how complicated it could be. It’s discretionary with me to propound questions to the jury.... If you answer those questions, the lawyers know exactly on what basis you will have made your decision and it is helpful to them and to appellate courts in reviewing the reasonableness of the jury decision. It also is a possible cause of confusion. I have had bad examples of juries coming back with one answer and another answer that is legally inconsistent and incompatible and cannot stand. So what we have done is do away with the possibility of those interrogatories and do away with the advantages that they bring and simplified the decision to one single question.
La.C.C.P. art. 1813(A) makes it discretionary with the trial court whether to “submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict.”
The record in the instant case does not support defendants-appellants’ contention that the trial judge abused his discretion in refusing to propound “specific interrogatories” to the jury. This assignment of error has no merit.
Accordingly, the judgment of the district court, formalizing the jury’s verdict, is affirmed. All costs of these proceedings, both at the trial court level and on appeal, are assessed against defendants-appellants, M.J. Strother and General Accident Fire & Life Assurance Corporation, Ltd. La.C.C.P. 2164.
AFFIRMED.

. La.C.C. art. 2323, as amended by Act 431 of 1979, effective August 1, 1980, abolished contributory negligence as a complete bar to recovery. The court’s instructions to the jury did not address comparative negligence. Appellants Strother and General neither assigned that failure as error nor briefed it in its appellate brief. We do not deem the failure to instruct as to comparative negligence an error patent on the face of the record and, accordingly, do not address comparative negligence.

. The record reflects that all evidence which would or might tend to show contributory negligence and assumption of the risk was allowed.