FREDERICKA HOMBERG WICKER, Judge.
 

 Lin this personal injury matter, defendants/appellants Lori A. Jackson and Louisiana Farm Bureau Mutual Insurance Company appeal a judgment awarding plaintiff/appellee Melvin Millien $62,500 and related medical expenses. The trial judge found that Mr. Millien sustained injuries as a result of falling off Ms. Jackson’s roof while in the process of placing a tarp on the damaged roof. The trial judge further apportioned 25% fault to Melvin Millien and 75% fault to the defendants/appellants. Ms. Jackson and Farm Bureau, her insurer, now appeal raising the following specifications of error. First, Ms. Jackson and Farm Bureau contend that the trial court erred in assessing them with any fault because Ms. Jackson’s roof did not present an unreasonable risk of harm. Second, Ms. Jackson and Farm Bureau contend that Melvin Millien was the sole and proximate cause of his injuries because, in ascending Ms. Jackson’s roof to affix the tarp, Mr. Millien used a ladder that was not as high as the eave of Ms. Jackson’s roof. For the reasons that follow, we affirm the judgment of the trial court.
 

 | ¡¡FACTS AND PROCEDURAL HISTORY
 

 On August 29, 2005, Hurricane Katrina passed over southeast Louisiana. The storm damaged the roof of Ms. Jackson’s home located at 1936 Williamsburg Drive in LaPlace, Louisiana. The damage to Ms. Jackson’s roof caused water to leak into her kitchen. On September 22, 2005, Hurricane Rita was threatening southeast Louisiana. Ms. Jackson asked Mr. Millien to place a tarp over the damaged portion of her roof to prevent water from continuing to leak into her residence and to prevent the potential of further damage from Hurricane Rita. After attaching the tarp to Ms. Jackson’s roof, Mr. Millien slipped on a loose shingle, slid off the roof, and fell to the ground.
 

 Trial in this matter was held on March 26, 2008. Mr. Millien testified at trial and in his deposition that was introduced into evidence that he and Ms. Jackson had been involved in a relationship for six years before the accident occurred. Mr. Millien is a forklift and vacuum truck operator who worked for PSC Phillip Services in West Lake before the accident.
 

 Mr. Millien testified that Ms. Jackson had told him that she had consulted with
 
 *171
 
 Farm Bureau before asking him to affix the tarp to her roof. According to Mr. Millien, a Farm Bureau official had told Ms. Jackson that Farm Bureau would reimburse Ms. Jackson for the damage to her kitchen if she installed a tarp on the damaged portion of her roof.
 

 The day of the accident, Mr. Millien testified that he leaned his twelve-foot ladder against the roof of Ms. Jackson’s home. The ladder was shorter than the roof. Mr. Millien climbed the ladder, went on the roof and placed the tarp in the area over the kitchen where the roof was leaking. On his way back to the ladder, Mr. Millien slipped on a loose shingle located near the edge of the roof and fell off the roof onto the concrete slab below. Mr. Millien testified that he could not tell |4the shingle on which he slipped was loose before he slipped on it. Mr. Millien testified that he slipped on the loose shingle as he sat down to climb down on the ladder before he reached the ladder.
 

 Mr. Millien testified that Ms. Jackson did not tell him about the extent of the damage to her roof or whether she had asked a professional to fix the roof. Moreover, Mr. Millien testified that he could not tell that the shingle he slipped on was loose merely by looking at it. Mr. Millien additionally testified that the loose shingle was not on a portion of Ms. Jackson’s roof where shingles were missing. After he fell to the ground, Mr. Millien could not move and Ms. Jackson had to drive him to the hospital. At the hospital, Mr. Millien’s leg was set and placed in a cast. As a result of the accident, Mr. Millien fractured his leg and smashed his heel. He was hospitalized and required surgery during which a metal plate was placed in his ankle. Mr. Millien had to have another surgery to remove the plate. Mr. Millien’s physical therapist had to make him a special shoe insert, which he was still wearing when this trial began. Mr. Millien also endured several months of physical therapy and had a home health nurse for seven months. During his treatment, complications occurred which lengthened and complicated his recovery. Mr. Millien testified that he still limps and experiences pain as a result of this accident.
 

 On cross-examination, Mr. Millien testified that he personally purchased the hammer and nails he used to attach the tarp to Ms. Jackson’s roof. Counsel for the appel-lees asked Mr. Millien if he was a “handyman sort of person,” to which he replied “I do my work at home.” Mr. Millien testified that he performed his own home maintenance and occasionally helped Ms. Jackson with maintenance on her home. However, Mr. Millien testified that he was not a professional roofer and that he had no expertise in the area of roofing. Moreover, Mr. Millien did not know the | sextent of the damage to Ms. Jackson’s roof and testified that he did not know about the different layers of materials on roofs or the signs of wear and tear on a roof.
 

 Mr. Millien admitted that the top step of the ladder he used to ascend Ms. Jackson’s roof was slightly shorter than the eave of Ms. Jackson’s roof. Thus, he had to step from the next to last step of the ladder onto the roof. Counsel for Farm Bureau and Ms. Jackson showed Mr. Millien a series of photographs. One of the photographs depicted an area of Ms. Jackson’s roof that had been damaged during Hurricane Katrina. Mr. Millien identified the damaged portion of the roof in the picture as the portion of Ms. Jackson’s roof where he placed the tarp. Mr. Millien testified that he placed the ladder approximately two to four feet away from the damaged portion on the corner of the roof. Mr. Millien was adamant that he did not know that there would be damage to Ms. Jackson’s roof until he ascended the ladder and
 
 *172
 
 saw the roof. Mr. Millien then placed the tarp over the exposed area of the roof and nailed down the tarp. Mr. Millien testified that he did not slip on a shingle as he was trying to climb back on to the ladder, rather, he slipped as he was walking in the direction of the ladder after nailing down the tarp. At the time he slipped, Mr. Millien was in a hands-free crouched position and was very close to the end of the roof. Mr. Millien acknowledged that he could have declined to get on Ms. Jackson’s roof and insisted that Ms. Jackson get a professional roofer.
 

 Ms. Jackson testified that she had not had the roof inspected after purchasing the house on Williamsburg Drive. She had the house inspected before she purchased it, but not between that time and August 2005 when Hurricane Katrina struck. After Hurricane Katrina struck, Ms. Jackson testified that she had several roof leaks. According to Ms. Jackson, an official from Farm Bureau had inspected the roof after Hurricane Katrina, however, she was not sure if this had occurred before or after Mr. Millien fell from her roof. She had not hired a roofer or a | (¡contractor to repair the damage. Ms. Jackson testified that at some point she contacted four or five roofers who gave her quotes between $5,000.00 and $3,900.00 to repair the roof. Ms. Jackson submitted these figures to Farm Bureau. Ms. Jackson testified that if she had had a check from Farm Bureau she would have hired a professional roofer to repair her roof rather than asking Mr. Millien to affix a tarp to the roof. The only way Ms. Jackson could repair the roof was with insurance money. Ms. Jackson admitted she did not call any roofers or community agencies about putting put the tarp. She testified that she did not know if she asked Farm Bureau whether it could send somebody to affix the tarp to her roof. Farm Bureau did not send anybody out to put a tarp on Ms. Jackson’s roof or give Ms. Jackson a list of professionals who were qualified to put a tarp on a roof.
 

 Ms. Jackson further testified that she did not inform Mr. Millien of the extent of damage to her roof prior to asking him to place the tarp on her roof or whether she had asked a professional to fix her roof. Ms. Jackson did not know what portion of the roof Mr. Millien fell from. However, Ms. Jackson testified that when she saw Mr. Millien on the ground after he fell, he was on the side of the house where Mr. Millien testified that he had placed the ladder. After Ms. Jackson testified, counsel for Mr. Millien rested.
 

 Counsel for the appellees subsequently recalled Ms. Jackson to the witness stand. Ms. Jackson testified that she had not had any problems with her roof prior to Hurricane Katrina. Ms. Jackson testified that she had contacted approximately five roofers before asking Mr. Millien to place the tarp on her roof. Ms. Jackson was waiting for Farm Bureau to pay for the repairs to her roof when Mr. Millien was injured. Ms. Jackson testified that Farm Bureau did not offer to place a tarp on her roof. The appellees then rested and the trial court then took this matter under advisement.
 

 |7On May 28, 2008, the trial court rendered its judgment, finding that the plaintiff had borne his burden of proof that the roof presented an unreasonable risk of harm. The trial court additionally found that Ms. Jackson had failed to have the roof inspected after Hurricane Katrina, to regularly maintain the roof before the storm, and had failed to warn Mr. Millien about the damaged condition of the roof.
 

 The trial court rejected the appellees’ argument that the roof presented an obvious danger, noting that “[i]t is assumed that when [Mr. Millien] stayed at [Ms.
 
 *173
 
 Jackson’s] house, he stayed inside the house where the roofs condition was not readily apparent.” (emphasis in original). The court additionally determined that while the unreasonably dangerous condition of the roof was the primary cause of Mr. Millien’s fall and injuries, Mr. Millien’s own actions contributed to his fall and subsequent injuries
 

 The trial court awarded Mr. Millien $62,500.00 plus legal interest from the date of judicial demand, applicable medical expenses, and costs. The trial court additionally apportioned “the plaintiff with 25% fault for the accident, while the defendant was found to be 75% at fault. Accordingly, the judicial award shall be made proportionate to each party’s respective fault.” The appellees filed a timely Motion for New Trial, or Alternatively, Motion to Clarify Judgment (the “Motion for New Trial”). In the memorandum accompanying the Motion for New Trial, Farm Bureau and Ms. Jackson requested that the trial court clarify the judgment because “[i]t is unclear whether the Court assessed the fault percentages before awarding the $62,500.” On September 23, 2008, the trial court rendered a Judgment denying the Motion for New Trial. The court additionally noted “defendants must pay 75% of $62,500.00 or $46,875.00 plus 75% of $33,533.56 in medical expenses. They, further, must pay legal interest from date of judicial demand plus court costs.” This timely appeal followed.
 

 |SLAW AND DISCUSSION
 

 In their first specification of error, the appellants contend that the trial court erred in allocating 75% of the fault for Mr. Millien’s injuries because Mr. Millien’s negligence was the sole and proximate cause of his fall. More specifically, the appellants contend that any potential danger on Ms. Jackson’s roof was “obvious, universally known, and easily avoidable” and that the roof did not therefore present an unreasonable risk of harm.
 

 La. C.C. arts. 2315 and 2316 are the codal foundation for delictual liability for negligence in Louisiana. La. C.C. arts. 2317 and 2317.1 define the basis for delic-tual liability for defective things. La. C.C. art. 2322 defines the basis for delictual liability for buildings.
 

 Prior to 1996, an owner’s liability for a vice or defect on the premises was rooted in La. C.C. arts. 2317 and 2322.
 
 See, e.g., Celestine v. Union Oil Co. of California,
 
 98-1868 (La.4/10/95), 652 So.2d 1299. Both La. C.C. art. 2317 and art. 2322 formerly imposed strict liability based upon status as owner or custodian rather than on personal fault.
 
 Celestine,
 
 652 So.2d at 1303. In 1996, the Louisiana legislature adopted La. C.C. art. 2317.1 and significantly amended La. C.C. art. 2322. La. C.C. art 2317.1 currently provides, in pertinent part:
 

 The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
 

 La. C.C. art. 2322 currently provides in pertinent part:
 

 The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the |9damage could have been prevented by the exercise of
 
 *174
 
 reasonable care, and that he failed to exercise such reasonable care.
 

 Accordingly, a plaintiff alleging negligence or strict liability of a building owner or custodian must now prove the following elements: (1) that the defendant knew or should have known of the vice or defect; (2) that the damage could have been prevented by the exercise of reasonable care; and (3) that the defendant failed to exercise such reasonable care.
 
 Cochran v. Safeguard Self-Storage, Inc.,
 
 02-1272 (La.App. 5 Cir. 4/29/03), 845 So.2d 1128, 1130. If the plaintiff fails to prove any one of these elements, the claim fails.
 
 Dauzat v. Thompson Const. Co., Inc.,
 
 02-989 (La.App. 5 Cir. 1/28/03), 839 So.2d 319.
 

 There is no fixed rule for determining whether the thing presents an unreasonable risk of harm. To assist the trier-of-fact, many factors are to be considered and weighed, including: (1) the claims and interests of the parties; (2) the probability of the risk occurring; (3) the gravity of the consequences; (4) the burden of adequate precautions; (5) individual and societal rights and obligations; and (6) the social utility involved.
 
 Dupree v. City of New Orleans,
 
 99-3651 (La.8/31/00), 765 So.2d 1002, 1012;
 
 Pepper v. Triplet,
 
 03-0619 (La.1/21/04), 864 So.2d 181, 190. It is well-settled law that a landowner owes a duty to a plaintiff to discover any unreasonably dangerous conditions, and to either correct the condition or warn the plaintiff of its existence.
 
 See, e.g., Socorro v. City of New Orleans,
 
 579 So.2d 931 (La.1991);
 
 Shelton v. Aetna Casualty & Surety Co.,
 
 334 So.2d 406, 410 (La.1976).
 

 The degree to which a potential victim may observe a danger is a factor in the determination of whether a condition is unreasonably dangerous.
 
 Hutchinson,
 
 866 So.2d at 235. Not every defect gives rise to liability.
 
 Jeansonne,
 
 8 So.3d at 619. The defect must be of such a nature to constitute a dangerous condition, hnwhich would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances.
 
 Id.
 

 Generally a defendant has no duty to protect against an open and obvious hazard.
 
 Id.
 
 If the facts of a particular case show that the complained of condition should be obvious to all, the condition is not unreasonably dangerous and the defendant owes no duty to the plaintiff.
 
 Id.
 
 (citing
 
 Pitre v. La. Tech Univ.,
 
 95-1466, 95-1487 (La.5/10/96), 673 So.2d 585, 591). It is the court’s obligation to decide which risks are unreasonable based upon the facts and circumstances of each case.
 
 Harris v. Pizza Hut of Louisiana, Inc.,
 
 455 So.2d 1364, 1371 (La.1984).
 

 The judicial process involved in deciding whether the risk of a thing is unreasonable is similar to that employed in determining whether a risk is unreasonable in a traditional negligence problem.
 
 Entrevia v. Hood,
 
 427 So.2d 1146, 1149 (La.1983). The manifest error standard of review applies to the trial court’s finding of whether a defect creates an unreasonable risk of harm.
 
 Reed v. Wal-Mart Stores, Inc.,
 
 97-1174, p. 5 (La.3/4/98), 708 So.2d 362, 365.
 

 After a thorough review of the record herein, we find that the trial court’s conclusion that the roof posed an unreasonable risk of harm was not manifestly erroneous. Following the passage of Hurricane Katrina, Ms. Jackson’s roof was damaged and water was leaking into her kitchen. By her own admission, Ms. Jackson failed to perform routine maintenance on the roof and failed to inform Mr. Millien that the roof had not properly been maintained or inspected by a roofer after Katrina. Moreover, Ms. Jackson admitted that she did not ask Farm Bureau whether
 
 *175
 
 they had a roofer who could place the tarp on her roof. Accordingly, Ms. Jackson relied on Mr. Millien to place the tarp on her roof. We find that the probability of the harm occurring in this case to be relatively high considering that |nMs. Jackson’s roof was already damaged when Mr. Millien affixed the tarp. We also find the potential gravity of harm to be high because (1) the roof was more than twelve feet off the ground and (2) Mr. Millien took adequate precautions in affixing the tarp. Most importantly, we find that the social utility of Mr. Millien’s conduct was high because he agreed to nail a tarp to Ms. Jackson’s roof under difficult conditions, despite the fact that he was under no legal obligation to do so. Ms. Jackson and Mr. Millien were aware that damage to Ms. Jackson’s roof was causing water to leak into her kitchen. Mr. Millien was not a professional roofer and had no experience in roofing. He nonetheless acted to preserve Ms. Jackson’s property. Unfortunately for Mr. Millien, he was injured in the process of doing so.
 
 [1]
 

 We additionally find that the trial court’s ruling apportioning 25% fault to Mr. Millien was not manifestly erroneous. In adjusting percentages of fault attributable to each tortfeasor, a court should consider both the nature of each party’s conduct and the extent of the causal relation between the conduct and the damages suffered. In assessing the ña-tee of the conduct of the parties, various factors may influence the degree of fault assigned, include (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the [ ^plaintiff are considerations in determining the relative fault of the parties.
 
 Watson v. State Farm Fire and Cas. Ins. Co.,
 
 469 So.2d 967, 973 (La.1985);
 
 Johnson v. State Farm Mut. Auto. Ins. Co.,
 
 95-1027 (La.App. 5 Cir. 5/15/96), 675 So.2d 1161, 1163.
 

 Here, Mr. Millien was solely responsible for determining when and how to affix the tarp to Ms. Jackson’s roof. Moreover, Mr. Millien admitted that he knew that Ms. Jackson’s roof was damaged because it was leaking. However, Mr. Millien testified that he did not know the extent of the damage to Ms. Jackson’s roof until he was actually on the roof. Mr. Millien was not aware that a danger existed on the portion of the roof that he slipped on. Moreover, for the reasons described above, we believe that the significance of Mr. Millien’s conduct was substantial. He placed a tarp on a hurricane-damaged roof to prevent further damage from a second hurricane. In doing so, he attempted to protect the property of an individual with no other recourse.
 

 Accordingly, this specification of error is without merit.
 

 In their second specification of error, the appellees allege that Mr. Millien
 
 *176
 
 negligently created a hazard by using an inadequate ladder that was shorter than the eave of Ms. Jackson’s roof. Thus, in this specification of error, the appellees are essentially arguing that Mr. Millien’s use of an inadequately high ladder was the cause of his fall.
 

 In addition to proving that the defect created an unreasonably dangerous condition, a plaintiff must also show the defect was a cause-in-fact of his injury in order to recover under La. C.C. art. 2317.1 or art. 2322.
 
 See, e.g., Jeansonne,
 
 8 So.3d at 620;
 
 Dauzat v. Thompson Const. Co., Inc,
 
 02-989 (La.App. 5 Cir. 1/28/03), 839 So.2d 319, 322;
 
 see also
 
 12 LA. CIV. L. TREAT. § 1:18 (“[t]he second clause, that the damage could have been prevented, apparently is a statement of the | iscausation requirement, which would have been an element of the action whether here stated expressly or not.”). Cause-in-fact usually is a “but for” inquiry that tests whether the accident would or would not have happened but for the defendant’s substandard conduct.
 
 McCain v. Howell,
 
 2006-1830 (La.App. 1 Cir. 9/14/07), 971 So.2d 323,
 
 writ denied,
 
 2007-2027 (La.12/14/07), 970 So.2d 533. When there are concurrent causes of an accident, which nevertheless would have occurred in the absence of one of the causes, the proper inquiry regarding cause-in-fact is whether the conduct under consideration was a substantial factor in bringing about the accident.
 
 Id. A
 
 party asserting comparative fault bears the burden of proof by a preponderance of the evidence that the other party’s fault was a cause-in-fact of the damage complained of.
 
 Watson v. Brazeel,
 
 36,499 (La.App. 2 Cir. 12/18/02), 833 So.2d 1276,
 
 writ denied,
 
 03-0217 (La.04/04/03), 840 So.2d 1215.
 

 Whether the defendant’s conduct was a substantial factor in bringing about the harm, and, thus, a cause-in-fact of the injuries, is a factual question to be determined by the factfinder.
 
 Theriot v. Lasseigne,
 
 93-2661 (La.7/5/94), 640 So.2d 1305, 1310 (citing
 
 Cay v. State DOTD,
 
 93-0887 (La.1/14/94), 631 So.2d 393 (La.1994)). This Court may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong, and where there is conflict in the testimony, inferences of fact should not be disturbed upon review, even though the reviewing court may feel that its own evaluations and inferences are as reasonable.
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989);
 
 Stobart v. State, Though DOTD,
 
 617 So.2d 880, 882 (La.1993). The trier of fact determines the credibility of witnesses, and within the bounds of rationality, may accept or reject the testimony.
 
 State v. Wilson,
 
 07-961, p. 9 (La.App. 5 Cir. 4/15/08), 984 So.2d 870, 875. It is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence.
 
 State v. Toussaint,
 
 98-1214, p. 6 (La.App. 5 Cir. 5/19/99), 734 So.2d 961, 964. When findings of fact are based on the credibility of witnesses, the manifest error standard demands great deference to the trier of fact’s findings.
 
 Rosell,
 
 549 So.2d at 844.
 

 In the instant case, Mr. Millien testified that he was able to step from the ladder onto Ms. Jackson’s roof. After placing the tarp on the damaged portion of Ms. Jackson’s roof, Mr. Millien began to walk in a crouched position towards the direction of the ladder. It was at that time that Mr. Millien slipped on a shingle and fell off Ms. Jackson’s roof. Mr. Millien testified that he had not reached the ladder when he slipped. Mr. Millien established that the cause-in-fact of his injury was slipping on a loose shingle; but for slipping on the shingle, his injuries would not have occurred. The appellees offered no testimony to rebut Mr. Millien’s testimony.
 

 
 *177
 
 The appellees rely on
 
 Barrow v. Brownell,
 
 05-1627 (La.App. 1 Cir. 6/9/06), 938 So.2d 118. Their reliance is misplaced. In
 
 Barrmv,
 
 the plaintiff was injured when he fell off a ladder while in the process of taking down Christmas lights.
 
 Barrow,
 
 938 So.2d at 120. The plaintiff was a general handyman who had worked for the defendant and her husband for several years.
 
 Id.
 
 On the date of the accident, the plaintiff had ascended a ladder, and removed the Christmas lights. He then placed his feet on the ladder, “placed his other arm on the top of the ladder, and leaned forward, placing his weight on the ladder.”
 
 Id.
 
 The bottom of the ladder slid outward, causing both he and the ladder to fall.
 
 Id.
 
 at 121.
 

 The defendant filed a motion for summary judgment, which was granted by the trial court. On appeal, the plaintiff contended that a material question of fact existed because he was “basically forced to take down Christmas lights from the defendant’s home despite the fact that he did not think that the conditions were safe.”
 
 Id.
 
 at 123. The First Circuit affirmed, noting that the plaintiff “fail[ed] to 11f,provide evidence to show how the weather conditions contributed to the accident ... and that [the plaintiff testified] that if he had thought the ladder was unsafe, he would have found another way to finish the job.”
 
 Id.
 

 Barrmv
 
 is inapplicable to the instant ease. In
 
 Barrow,
 
 the First Circuit determined that the trial court’s ruling that the defendant owed no duty to the plaintiff was not manifestly erroneous.
 
 Id.
 
 In the instant case, Ms. Jackson asked Mr. Mil-lien to place a tarp on her roof after Farm Bureau requested the same. According to Mr. Millien’s testimony he traversed the ladder, affixed the tarp to Ms. Jackson’s roof, and slipped on a shingle on his return march to the ladder. The trial court thus made a credibility determination by believing Mr. Millien’s testimony that he fell due to a loose shingle on Ms. Jackson’s roof rather than his own negligence in using a ladder that was too short to ascend the roof. We cannot say that the trial court was manifestly erroneous in this determination.
 

 Accordingly, this specification of error is without merit.
 

 CONCLUSION AND DECREE
 

 For the foregoing reasons, the judgment of the trial court is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . We need not address here whether Mr. Mil-lien was entitled to '‘rescuer” status. We do point out, however, that in one factually similar case, the Third Circuit determined that a man who tried to ascend a neighbor's roof to put out a fire and subsequently fell off the roof was entitled to rescuer status as "the record indicates that plaintiff was acting to preserve the lives and property of the tortfeasor and others endangered by the fire.”
 
 Inseco v. Cambridge Mut. Fire Ins. Co.,
 
 447 So.2d 606, 611 (La.App. 3 Cir.1984).