520 So.2d 1145 (1987)
Judy Kay MOUTON, Plaintiff-Appellant,
v.
Anna BONNETT, Rockwood Insurance Co., John Kenney and Century Insurance Co., Defendants-Appellees.
No. 86-1134.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1987.
Writs Denied February 5, 1988.
*1146 Guidry & Guidry, Edmond L. Guidry III, St. Martinville, for plaintiff-appellant.
Michael W. Fontenot, Peter Piccione, Hurlburt & Privat, David A. Hurlburt, Lafayette, for defendants-appellees.
Before FORET, YELVERTON and KNOLL, JJ.
FORET, Judge.
Plaintiff, Judy Kay Mouton, filed suit against Anna Bonnett, Rockwood Insurance Co., John Kenney, and Century Insurance Company for damages allegedly sustained as a result of an automobile accident which occurred on October 31, 1983. At the time of the accident, plaintiff was stopped at a red light. While at this standstill, plaintiff's vehicle was struck by an automobile driven by John Kenney, which had been struck by a vehicle driven by Anna Bonnett. Pursuant to a motion for summary judgment, John Kenney and Century Insurance Company were dismissed from the suit. Pursuant to an agreement between plaintiff and the defendants, plaintiff agreed to accept as a maximum judgment the balance of liability limits remaining under the Rockwood Insurance Company policy ($295,000) in exchange for a stipulation of liability on behalf of Rockwood Insurance Company. As a result of the aforesaid agreement, plaintiff released the original defendant, Anna Bonnett, and reserved all rights against the remaining defendant, her insurer, Rockwood Insurance Company.
Trial by jury was held and a verdict was returned for plaintiff and against the defendant in the following amounts:

1. Pain and suffering, mental and physical ----- $10,000
2. Loss of earnings and loss of ability to
 earn income, past and future ---------------- $ 7,000
3. Medical expenses ---------------------------- $ 5,000
4. Transportation expenses --------------------- $ 900
5. Loss of household services ------------------ -0-

A motion for judgment notwithstanding the verdict and in the alternative, for an additur, and in the further alternative, for a new trial, was filed on behalf of the plaintiff. Plaintiff's motions were denied, from which this appeal lies.
The sole issue in this appeal is quantum. Plaintiff contends that the jury erred in failing to award adequate damages to compensate plaintiff for her serious and permanent injuries. Plaintiff further maintains that the trial judge erred in allowing prejudicial evidence and comments by defense counsel which improperly influenced the decision of the jury.
Plaintiff argues that the jury erred as follows:
(1) In failing to find that the injuries sustained by plaintiff were more probably than not caused in the automobile accident of October 31, 1983,
(2) In failing to award adequate damages for: medical expenses, past, present and future; loss of earnings and the ability to earn income; transportation expenses; and loss of household services in view of the evidence and law.
In addressing the initial issue as to whether the jury failed to find that plaintiff's injuries were more probably than not caused by the accident of October 31, 1983, we note that on July 14, 1984, plaintiff was involved in a second automobile accident in Jackson Parish, Louisiana. Plaintiff testified that in the second accident she received bruises on her knee, head, chest and arms. For approximately one month after the accident, her back pain was more severe but then reverted back to the same type pain she had after the accident of October 31, 1983. With regard to the causal connection between the October 31, 1983 accident and plaintiff's injuries, Dr. Louis *1147 Blanda, an orthopedic surgeon, testified as follows:
"Q. Doctor, in view of the history which you took from Mrs. Mouton on March the 1st, 1984, and the history that you took on the 27th of March and April the 26th, and subsequently, and your treatment of Mrs. Mouton, can you say that based on a reasonable medical probability, that the injuries suffered to the L-3,4 and L-4,5 disc of Mrs. Mouton was caused by the accident of October 31st of 1983?
A. Well, it would certainly have to be a probability. I can't say with a hundred percent certainty that it was, but as you know, she had two injuries, and the relation of each injury has to be taken according to the patient's history or what she said she felt. When she first came to see me, and apparently, when she first went to see Dr. Smith, she complained of back pain and leg pain when she saw me. Then she had this other accident, and she said it made the pain worse for a while, but then it gradually dissipated, and then she resumed, or at least went back to her status that she had been before the second injury. So, if this is a correct history, and there is nothing that can change that history, then I would certainly say that the probability is that the first accident initiated or caused the disc problems." (Emphasis ours.)
For the record, we note that Dr. Robert Rivet's testimony was essentially the same as Dr. Blanda's and therefore we need not articulate his opinion. Dr. Rivet is a neurosurgeon in Lafayette.
In regards to the trial judge's failure to grant a judgment notwithstanding the verdict, the trial judge stated:
"Plaintiffs very able and articulate counsel makes an interesting and persuasive argument for his alternative motions. He has given to the Court much concern and left the Court not at all certain that its ruling herein is correct.
"The decision of the jury was, in the Court's opinion, unfortunate and inequitable. It is not the decision which this Court would have rendered had this been a bench trial. It was proved to my satisfaction that the accident at issue in this suit, more probably than not, caused the plaintiff's injuries and present condition."
Under this evidence, we are convinced that plaintiff's injuries were caused by the accident of October 31, 1983 and, at most, temporarily aggravated by the July 14, 1984 accident.

THE NATURE OF INJURIES AND QUANTUM
It is axiomatic that an appellate court is justified in disturbing a jury's award of damages when the record reveals a clear abuse of discretion. The jury awarded plaintiff $10,000 for pain and suffering (mental and physical); $7,000 for loss of earnings and loss of ability to earn income (past and future); $5,000 for medical expenses; and $900 for transportation costs, for a total of $22,900.00.
Plaintiff testified that at the time her vehicle was struck, her body was either turned or in the motion of turning because she was checking for her baby's safety. Immediately after the accident, plaintiff went to Dr. W.I. Smith, a general practitioner in Lafayette. Plaintiff was then treated by Dr. J.R. Perry, a chiropractor, from November 4, 1983, until her treatment began with Dr. Blanda. Dr. Blanda first saw plaintiff in March of 1984 and continued to treat her to the date of trial. His initial diagnosis was that plaintiff was suffering from a muscular type of injury and recommended physical therapy three times a week. Treatment consisted of traction on her neck, electric impulses, a heating pad set-up, and exercises. Subsequently, with pain still persisting, Dr. Blanda ordered a CAT scan to be performed. This revealed disc problems at the L-3,4 and L-4,5 levels. Blanda then sent plaintiff to Dr. Rivet, a neurosurgeon, after prescribing continued medical treatment. Dr. Rivet *1148 testified that the CAT scan showed evidence of degenerative discs at L-3,4 and L-4,5. Plaintiff returned to Dr. Blanda and stated that she hadn't had much progress with the medical treatment. Subsequently, he recommended that a myelogram be performed, which proved to be negative. Following this test, Dr. Blanda ordered a discogram to be performed on plaintiff. This test showed that the two discs on the previous CAT scan were abnormal; that the L-3,4 disc was actually herniated and that the L-4,5 disc was bulging and degenerative. Dr. Blanda and plaintiff then discussed further treatment, and it was agreed that a chymopapain injection would be worthwhile. Plaintiff had the chymopapain surgery done a few days later and subsequently was discharged. All during this time, plaintiff's symptoms and problems persisted.
Before the accident on October 31, 1983, plaintiff, then 30 years old, had never experienced back pain. She did gardening and took care of a greenhouse. She went camping and hiking with her husband and children. In addition, she performed all of the household duties. As examples of her change in lifestyle, plaintiff testified that there is no more camping and hiking; she is unable to do lawn and yard work; that the children are performing the household duties; she can't hold her young children in her arms because it is too painful, and she has had to stop breast-feeding her baby.
The defendant submitted no medical or lay testimony of its own. Our review of the record convinces us that the jury was manifestly erroneous and abused its "much discretion" in awarding plaintiff only $10,000 for pain and suffering. Such a sum is inadequate to compensate plaintiff for her injuries. We find that the lowest amount the jury could award is $100,000.
Plaintiff also argues that the jury erred in awarding $7,000 for loss of earnings and loss of ability to earn income, past and future. At the time of trial, plaintiff was 33 years old and unemployed. Prior to this, she was employed in maid services. At other times, she was employed as a secretary for Triple A Insurance and as an assistant clerk for the Town of Youngsville. She has a high school education and completed two years at Delta Business College. While living in Virginia, she took courses in insurance and became a qualified insurance agent there.
Testifying as to plaintiff's ability to work, both Drs. Blanda and Rivet agreed that plaintiff should not take employment that involves sitting and/or standing for long periods of time or repetitive stooping, bending, and lifting. Additionally, both doctors agreed that plaintiff could do light and sedentary work.
Dr. Pettingill, defendant's economic expert, testified as to loss of past earnings and future earning capacity. Using a method known as the Increment-Decrement Method, Pettingill determined that if plaintiff went back to work one year from the date of trial as a secretarial/clerical type worker, earning the average rate of hourly pay for that type of work, her losses for past earnings and future earning capacity would amount to $25,000. Pettingill included discount and growth rates in reaching this figure. No other evidence concerning plaintiff's return to work in a secretarial/clerical capacity was offered.
Plaintiff's physical condition before her injury was not that of a fit person; she was overweight by at least 30 pounds. After her injury and upon medical advice, plaintiff lost a substantial amount of weight. Her past employment record reveals that her work periods were sporadic; however, she appears to be interested in and educated for some type of clerical work. The record before us shows that plaintiff did maid services for a short period of time.
In light of the evidence, we find that plaintiff's earning capacity is damaged; however, we also find that she is able to return to the work force in some type of clerical capacity. We find that the jury erred in awarding $7,000 for loss of earnings and loss of ability to earn income in the future. There was ample evidence from which the jury could have determined these damages. Dr. Blanda admitted that patients with the same injuries as plaintiff are about 20% disabled. In view of the *1149 evidence, an award for loss of earnings and loss of future earning capacity of $25,000 is appropriate.
We now address the issue of whether the jury abused its discretion in awarding $5,000 for medical expenses. The jury did not break down its award for medical expenses, past and future. Past medical bills, proved at trial, show expenses totalling approximately $17,232. Drs. Blanda and Rivet testified that the probability that surgery is necessary for plaintiff is greater than 50/50. In particular, Dr. Blanda concedes that if plaintiff loses weight, her pain might go away, but he maintains that she probably needs surgery. Dr. Rivet stated that it is probable that surgery should be performed on plaintiff; that the type of surgery would be a decompressive laminectomy with a discectomy at L-3,4 and L-4,5. Both doctors testified that the medical expenses in the future would range from $5,000 to $10,000, and that the cost of surgery would range between $10,000 and $15,000. We find that the record substantiates an award of $17,232 for past medical expenses and $15,000 for future medical expenses.
Plaintiff claims damages for loss of household services. This claim is speculative, and we deny damages.
Finally, plaintiff seeks an increase in the award of transportation expenses. We find that the jury did not abuse its discretion in awarding plaintiff $900.
Because of our decision herein, it is not necessary that we go into the impropriety of statements made by defense counsel in the presence of the jury.

DECREE
For the reasons given above, the judgment of the trial court is amended to increase the award for pain and suffering from $10,000 to $100,000; for medical expenses, past and future, from $5,000 to $32,232; and for loss of earnings and loss of future earning capacity from $7,000 to $25,000. In all other respects, the judgment of the trial court is affirmed.
Costs of this appeal are assessed against defendant-appellee.
AMENDED AND AFFIRMED.