617 So.2d 1286 (1993)
Michelle DEVALL and Phillip W. Devall, Plaintiffs-Appellants,
v.
Deborah B. BEGNAUD, et al., Defendants-Appellees.
No. 92-851.
Court of Appeal of Louisiana, Third Circuit.
May 5, 1993.
*1287 Kaliste Joseph Saloom III, Lafayette, for plaintiffs-appellants.
Jeffrey A. Rhoades, Lafayette, for Mary S. Jones.
Edward O. Taulbee IV, Lafayette, for State Farm Mut. Auto. Ins. Co.
Before DOUCET, YELVERTON and COOKS, JJ.
DOUCET, Judge.
This is a suit to recover damages for personal injuries arising out of an automobile accident in Lafayette, Louisiana. The plaintiffs, Michelle Devall and her husband, Phillip W. Devall, have appealed a judgment awarding them damages in the sum of $12,250.00, which was rendered by the trial court pursuant to a jury verdict.
*1288 The plaintiffs argue that the jury erred in the following respects: (1) in failing to assess 100% of the fault for the accident to the defendants, Mary S. Jones and Deborah B. Begnaud; (2) in failing to award adequate damages for medical expenses, wages, and general damages; and (3) in failing to award damages for Phillip W. Devall's loss of consortium.
The evidence concerning the events leading up to the accident was not seriously disputed. On November 19, 1988 at about 6:00 p.m., Mary Devall and her three children were proceeding west on Johnston Street in the plaintiffs' Ford station wagon. The defendants, Mary Jones and Deborah Begnaud, were following a few car lengths behind in Ms. Begnaud's Ford Escort. Ms. Jones was driving, and Ms. Begnaud occupied the front passenger's seat. It had been raining lightly, and the street was wet and slippery.
Johnston Street is a busy, four lane street with a fifth center lane for left turns. The parties were travelling in the inside westbound lane next to the left turn lane. The accident occurred in the vicinity of the intersections of Johnston Street and Arnould Boulevard and Woodvale Avenue. The two intersections are a short distance apart, and both are controlled by traffic lights. There was a conflict in the testimony with regard to whether the cars had stopped at the traffic lights prior to the accident. However, the parties were in agreement that they were travelling at a fairly slow rate of speed.
There were two cars in front of Mrs. Devall. The first car suddenly made an unsignalled left turn from the lane that the parties were occupying, rather than using the turning lane to the left. The second car, which was immediately in front of Mrs. Devall, apparently had difficulty stopping and partially entered the turning lane to the left before coming to a stop. Mrs. Devall applied her brakes and was able to stop about a car length from the car stopped in front of her. Ms. Jones also applied her brakes and veered to the left, but she was unable to stop before striking the back of the plaintiffs' station wagon. The collision caused minimal damage to the two vehicles.

THE JURY'S ASSESSMENT OF LIABILITY
The jury assessed 40% of the liability for the accident to the defendants and 50% to the unknown driver who stopped in front of Mrs. Devall. The jury assessed the remaining 10% of the fault to Mrs. Devall. The plaintiffs argue that the jury erred in failing to assess 100% of the fault to the defendants.
After reviewing the evidence, we are unable to say that the jury was manifestly wrong in its finding that the unknown driver in front of Mrs. Devall bore 50% of the fault for the accident. Both parties were in agreement that this driver made an unsignalled left turn from the inside lane, rather than entering the center lane provided for left turns. This maneuver was illegal and improper and was clearly a precipitating cause without which the accident would not have occurred. See LSA-R.S. 32:79 and 32:104.
The plaintiffs' reliance on the decisions in Viator v. Gilbert, 206 So.2d 106 (La.App. 4th Cir.1968), writs denied, 251 La. 1047, 1048, 208 So.2d 323 (1968), writ granted, 251 La. 1056, 208 So.2d 326 (1968), amended, 253 La. 81, 216 So.2d 821 (1968) and Welch v. Thomas, 263 So.2d 427 (La.App. 1st Cir.1972), writ denied, 262 La. 1132, 1137, 1143, 266 So.2d 434, 436, 438 (1972) is misplaced. In Viator v. Gilbert, supra, the lead vehicle made a sudden stop, but the driver of the second vehicle was able to bring his vehicle to a gradual stop 12 to 18 feet behind the lead vehicle before being struck by the third automobile driven by the defendant. In light of the clear opportunity that the following vehicles had to stop, the court concluded that the lead driver's negligence was not a proximate cause of the accident.
In the present case, the evidence clearly shows that Mrs. Devall's stop was not gradual. She testified that she "probably" slammed on her brakes and acknowledged that she skidded. She also candidly *1289 admitted that she was scared that she was going to hit the car in front of her. In light of those facts, we cannot conclude that the negligence of the lead driver was so far removed as to preclude its consideration as a legal cause of the accident which took place.
In Welch v. Thomas, supra, the lead vehicle suddenly and without warning stopped for a dead cat in the road. The second vehicle was able to stop with some difficulty. However, the third driver, who clearly failed to maintain a proper lookout, made no attempt whatsoever to stop. The court did not conclude that the lead driver's actions were not a cause of the accident. The court rejected the defendant's claim that he was confronted with a sudden emergency, which exonerated him from liability. The court based its rejection of the sudden emergency defense on the fact that the second vehicle was able to stop and on the fact that there were no skid marks or other evidence that the defendant had taken any evasive actions at all.
The facts of this case are similar to those that were presented in Guidry v. Cagle Brothers Circle C Pump Service, Inc., 453 So.2d 1280 (La.App. 3rd Cir.1984). In that case, the plaintiff, who was the lead driver, stopped in the highway in an attempt to make an improper U-turn. The second vehicle was able to avoid colliding with the plaintiff, but only by stopping on the shoulder to the right. The defendant, who was driving the third vehicle, was unable to stop or to veer to the right, because the shoulder was occupied by the second vehicle. The jury in that case, assigned 50% of the fault for the accident to plaintiff, and this Court affirmed that assessment of fault, finding no error in the jury's conclusion that the plaintiff had committed acts of negligence which endangered the following drivers.
In view of the fact that Mrs. Devall was compelled to make a sudden skidding stop, which Ms. Jones was unfortunately unable to duplicate, we cannot say that the jury was clearly wrong in finding that 50% of the fault for the accident was attributable to the driver of the lead vehicle. The negligence of this unknown driver was a contributing cause of the accident.
The jury's assignment of 10% of the fault to Mrs. Devall is more troublesome. Mrs. Devall was forced to make a sudden emergency stop. There was no evidence clearly showing that she was inattentive or driving too fast for the prevailing conditions. On the contrary, the fact that she was able to bring her vehicle to a stop would seem to indicate that she had it under proper control and reacted promptly to an emergency situation.
In light of these facts, it is difficult to understand how the jury arrived at its finding that Mrs. Devall was at fault. However, because of the effect of Louisiana Civil Code Article 2324 on the plaintiffs' recovery, we need not decide whether the jury erred in this regard. Article 2324 imposes solidary liability on joint tortfeasors to the extent necessary to permit the plaintiff to recover 50% of his or her damages. In keeping with the provisions of Article 2324, the trial court's judgment ordered the defendants to pay 50% of the damages that the jury awarded to the plaintiffs. The result reached is therefore the same as if the jury had assessed 50% of the fault to the defendants, rather than assigning 10% to Mrs. Devall. Since we find no manifest error in the jury's assignment of 50% of the fault to the unknown driver preceding Mrs. Devall, it is not necessary to disturb the jury's findings with regard to the remaining 50% of the fault.

DAMAGES FOR MRS. DEVALL'S INJURIES
The jury awarded the plaintiffs $4,500.00 for Mrs. Devall's past medical expenses, $15,000.00 for her past pain and suffering, and $5,000.00 for her future pain and suffering. Nothing was awarded for future medical expenses, past lost wages or future lost wages. The plaintiffs argue that the jury erred in failing to award damages for lost wages and that its awards for general damages and medical expenses are inadequate.
Many of the plaintiffs' arguments with regard to the jury's assessment of damages *1290 are founded on the presumption that Mrs. Devall's injuries were serious enough to require future surgical intervention. In failing to award future medical expenses, the jury clearly rejected the plaintiffs' claim that Mrs. Devall will need future surgery and will in fact undergo it. After reviewing all of the evidence, we cannot say that the jury was clearly wrong.
The only medical witness who testified regarding the possibility of future surgery was Dr. John Cobb, the orthopedic surgeon who treated Mrs. Devall for her injuries. His testimony on this point was as follows:
Q What is your opinion to your course of treatment for Michelle at this point?
A I think thatI don't think she has much of an option in terms of therapy any more. I think she just elects to live with it or if she decides she wants to do something with this disk, then I'd probably work her up for surgery to see if this disk is contributing significantly to her pain and maybe she would get some relief of it from surgery.
Q What type of surgery procedure do you think she would be a candidate for?
* * * * * *
A In terms of working up a case like this where you're dealing basically with what's called a symptomatic spondylosis, and particularlypossibly more than one level, a diskogram would have to be done to determine first off if this is a significant problem of pain for her, if it is isolated at one level or two levels or whatever.

So prior to recommending surgery a diskogram would be done to confirm the basis of the pain and then discuss the surgery. But actually, the surgical procedure itself would be a diskectomy and fusion. (emphasis added.)
It is clear from this testimony that Dr. Cobb has not recommended surgery. Whether or not he will perform the additional diagnostic work that he deems necessary before making that recommendation depends on how significant Mrs. Devall considers her pain. There is substantial evidence in the record to support the conclusion that Mrs. Devall will not elect to undergo surgical treatment.
While Dr. Cobb felt that a degenerative condition in Mrs. Devall's cervical spine was probably contributing to her pain, he felt that some of the pain was from injuries to her soft tissues. Following the accident, she showed some improvement in response to conservative treatment. It is not clear whether her neck required medical treatment between February of 1990 and March of 1991. Dr. Cobb saw her several times between March and August of 1990 for an unrelated knee problem. Mrs. Devall testified that Dr. Cobb also treated her neck during that period, but Dr. Cobb testified that he never asked her about her neck, and she never complained about her neck during those visits.
Shortly after Mrs. Devall returned to see Dr. Cobb with complaints about her neck in March of 1991, she was involved in another rear end collision. The plaintiffs testified that this second accident had no effect on her pain, but Dr. Cobb testified that it had "worsened the symptoms." The jury might have found that this second accident aggravated Mrs. Devall's soft tissue injuries and that those injuries could be expected to improve without surgical treatment.
Mrs. Devall testified that she has a high pain tolerance and therefore does not "really need" pain medication very often. As an operating room nurse, she appreciates and fears the risks associated with general anesthesia and surgery. She frankly admitted that she doesn't like surgery and has put it off.
Like any other damages, future medical expenses must be established with some degree of certainty. The plaintiff must establish that it is more probable than not that these expenses will be incurred. Veazey v. State Farm Mutual Automobile Insurance Co., 587 So.2d 5 (La.App. 3rd Cir.1991); Pitts v. Bailes, 551 So.2d 1363 (La.App. 3rd Cir.1989), writ denied, 553 So.2d 860 (La.1989), 556 So.2d 1262 (La. 1990); Morris v. Highlands Insurance Co., 525 So.2d 125 (La.App. 3rd Cir.1988).
*1291 Considering the evidence as a whole, we cannot say that the jury was clearly wrong in finding that it was more probable than not that Mrs. Devall will not undergo surgery in the future. While the plaintiffs also argue that the jury should have awarded additional sums for future conservative treatment, the evidence does not support such an award. Dr. Cobb testified that additional therapy would not help her any more. Her past expenditures for medications have been minimal, and there was no evidence clearly showing that she will need medication in the future.
The plaintiffs also argue that the jury awarded inadequate general damages. They equate Mrs. Devall's injuries with those suffered by the plaintiff in Mouton v. Bonnett, 520 So.2d 1145 (La.App. 3rd Cir. 1987), writ denied, 521 So.2d 1138 (La. 1988), 522 So.2d 567 (La.1988). The plaintiff in that case had degenerative discs at two lumbar levels. One of the discs was bulging, and the other was herniated. The plaintiff had undergone chymopapain surgery prior to trial.
In the present case, the jury obviously found that Mrs. Devall would not require surgery, and our review of the record has not shown that they were clearly wrong in doing so. Accordingly, we do not find Mouton v. Bonnett, supra, instructive in evaluating the jury's general damage award.
We believe that the injuries established by the evidence are more closely analogous to those of the plaintiff in Zimmerman v. Collins, 529 So.2d 529 (La.App. 3rd Cir. 1988). In that case, this Court affirmed the trial court's award of $12,500.00 in general damages for the plaintiff's acute cervical syndrome with pain radiating into the top of her shoulders. While Mrs. Devall's injuries were perhaps more severe, the jury's $20,000.00 award of general damages was substantially more generous. We find no abuse of the jury's discretion.
We do find that the jury abused its discretion in failing to award damages for past lost wages. Mr. Russell Arceneaux, the comptroller at the Surgery Center, Inc. where Mrs. Devall is employed, testified that she missed 37 hours of work in 1989, which at her rate of pay of $14.42 resulted in a loss of $533.54. There was uncontradicted evidence indicating that Mrs. Devall missed these hours of work in 1989 as a result of the injuries that she sustained in the accident. She is therefore entitled to be compensated for this loss. As the defendants correctly argue, the other lost hours that Mr. Arceneaux testified to occurred in May of 1990, when Mrs. Devall was convalescing from surgery for her unrelated knee injury, and she is not entitled to be compensated for them.
The plaintiffs' claim for future lost wages is premised on the assumption that Mrs. Devall will be unable to work after undergoing surgery on her neck. The proof of future surgical treatment is insufficient for the reasons stated earlier. Consequently, the jury did not err in failing to award damages for future lost wages.
We find that the jury did err in awarding only $4,500.00 for past medical expenses. It is undisputed that the medical expenses at the time of the trial totalled $7,876.96. Evidence was also presented without objection establishing that State Farm Mutual Automobile Insurance Company paid $2,000.00 of those expenses under the medical payments provisions of a policy that it issued to the plaintiffs and $1,500.00 under the liability provisions of a policy issued to Deborah Begnaud. The jury apparently credited the defendants with the $3,500.00 that had been paid by State Farm and awarded the plaintiffs the balance of their medical expenses.
We find no error in the jury's apparent decision to credit the defendants for the $1,500.00 paid under the liability provisions of Deborah Begnaud's policy. The defendants' liability to pay medical expenses has been satisfied to the extent of this payment. However, we cannot agree with the defendants' argument that the plaintiffs are prevented by principles of conventional and legal subrogation from again recovering the $2,000.00 that was paid by State Farm under the medical payments provisions of their policy.
*1292 Insofar as Mary Jones and Deborah Begnaud are concerned, the plaintiffs' insurance policy is a collateral source, which does not inure to their benefit. Deshotel v. South Louisiana Contractors, Inc., 484 So.2d 155 (La.App. 3rd Cir.1986), opinion reinstated, 487 So.2d 789 (La.App. 3rd Cir.), writ denied, 493 So.2d 635 (La.1986); Hawthorne v. Southeastern Fidelity Insurance Co., 387 So.2d 26 (La.App. 3rd Cir. 1980); Taft v. Gist, 293 So.2d 641 (La.App. 3rd Cir.1974). Furthermore, State Farm is contractually precluded from recovering these expenses under the third general condition of its policy, which was introduced into evidence. That condition reads:
3. Our Right to Recover Our Payments.
a. Medical payments, death, dismemberment and loss of sight, total disability and loss of earnings coverage payments are not recoverable by us. (emphasis added.)
Inasmuch as Deborah Begnaud and Mary Jones are precluded by the collateral source rule from claiming a credit for the payments made by State Farm in its capacity as the plaintiffs' insurer, and the contract specifically precludes State Farm from recovering its medical payments, the jury erred in crediting the defendants with the $2,000.00 paid by State Farm under the plaintiffs' policy.

THE CLAIM FOR LOSS OF CONSORTIUM
In support of their claim for Mr. Devall's loss of consortium, the plaintiffs argue that because Mr. Devall's employment forced him to be away from home much of the time, he relied heavily upon Mrs. Devall's services and was adversely affected by her incapacity. They also argue that the plaintiffs' sexual relationship was adversely affected.
The evidence established that at the time of the accident, Mr. Devall was away from home working three weeks at a time. Subsequent transfers allowed him to go home every weekend, and later to remain at home while travelling only six to seven days per month. There is no indication that the plaintiffs encountered any significant problems in maintaining their household despite Mr. Devall's absences and Mrs. Devall's injuries.
Although Mr. Devall testified that there was a decline in the plaintiffs' physical relationship, his testimony does not indicate that it was to any significant degree. He simply testified that whether or not they engaged in physical intimacies depended on how Mrs. Devall felt and on her mood. He denied that his love for his wife had decreased and maintained that they were still "close."
In light of these facts, we do not find that the jury abused its discretion in failing to award damages for loss of consortium. See Rossitto v. Jinks, 576 So.2d 1115 (La. App. 3rd Cir.1991); Zimmerman v. Collins, supra.
For the foregoing reasons, the judgment of the trial court is amended to increase the award for past medical expenses to the sum of $6,500.00 and to award $533.54 for past lost earnings, and accordingly, the judgment in favor of Michelle Devall and against the defendants is increased to the sum of $13,766.77, that sum representing 50% of her total damages, and in all other respects, the judgment of the trial court is affirmed. The costs of this appeal are assessed against the defendants.
AMENDED AND AFFIRMED.