525 So.2d 642 (1988)
Myron ARDOIN and Jeannette V. Ardoin, Plaintiffs-Appellants,
v.
Jacob ABDALLA, Defendant-Appellee.
No. 87-304.
Court of Appeal of Louisiana, Third Circuit.
May 11, 1988.
Guy O. Mitchell, Ville Platte, for plaintiffs-appellants.
Watson, Blanche, Wilson & Posner, Bill Mitchell, Baton Rouge, for intervenor-appellant.
*643 Brinkhaus, Dauzat, Falgoust, Jerry J. Falgoust, Opelousas, Brame, Bergstedt & Brame, Joe A. Brame, Lake Charles, for defendant-appellee.
Before DOMENGEAUX and GUIDRY, JJ., and REGGIE[*], J. Pro Tem.
DOMENGEAUX, Judge.
The plaintiffs, Myron Ardoin and his wife Jeannette V. Ardoin sued the defendant, Jacob Abdalla under a theory of strict liability for back and leg injuries Myron sustained after he fell down an allegedly defective stairway in a building owned by the defendant. Jacob Abdalla and his insurer, American Manufacturers Mutual Insurance Co., denied liability. However, in the event that they were held liable, they filed a third party demand against their lessee St. Landry Supply, Inc., a/k/a Bordelon, Inc. Also, American Hardware Mutual Insurance Co., the worker's compensation carrier for Bordelon, intervened to recover the payments they made to the plaintiff as an injured employee of Bordelon. The Trial Judge ruled in favor of the defendant, Jacob Abdalla, and his insurer and against the plaintiffs and the intervenor, finding that the plaintiffs failed to prove by a preponderance of the evidence that any alleged defect in the stairway was the cause in fact of the plaintiffs' injuries. Abdalla's third party demand was also dismissed.
The plaintiffs have appealed arguing that the Trial Court incorrectly interpreted La. C.C. art. 2322 which imposes strict liability on an owner of a building for damages caused by a ruin in the building and hence, committed manifest error in finding no liability on the part of the defendant, Jacob Abdalla.

FACTS
Plaintiff, Myron Ardoin, a parts manager and salesman for Bordelon Inc., sustained a lower back injury and, later developed a numbness in his left leg after he fell down a flight of stairs at work. The defendant, Jacob Abdalla, is the owner and lessor of the building leased to Myron's employer, Bordelon, Inc. For several months Myron received worker's compensation payments from Bordelon's worker's compensation carrier for his injuries but these payments were subsequently terminated. The Ardoins sued Jacob Abdalla for Myron's back and leg injuries alleging that Abdalla should be held strictly liable as the owner of a building with a defective staircase which caused the plaintiff's injuries.
On April 19, 1984, while at work, Myron Ardoin was discarding outdated stock in the upstairs storage room of Bordelon, Inc. He picked up a box containing an obsolete auto part and proceeded down the stairway. As he stepped down, he turned slightly to his right so as to properly manage the box down the staircase. After descending one or two steps he realized that the box was caught on something. Without looking, he presumed that the box was caught on a wooden parts storage bin located next to the stairway. In order to free the box he jerked to his left, but lost his balance and fell down the stairs. At the bottom of the stairs he looked up and saw the handrail wobble slightly, leading him to believe that the box had not been caught on the bin, but instead had been caught on the stair handrail.
Myron testified that he is very well acquainted with the stair's design and that he had used these stairs without incident hundreds of times during his four years employed at Bordelon. However, he did claim to have previously complained to the management that he thought this handrail was dangerous. The handrail ran the length of the stairs and was attached to the wall in two spots, at the foot of and in the middle of the staircase. The top end of the two inch diameter steel pipe handrail was unattached to and met one inch below the handrailing segment on the stair's landing. Additionally, the wood on the landing had a ten inch hairline crack which Myron claimed may also have contributed to his fall.
*644 After falling, Myron's back started to hurt and he went home for the day to rest. Four days later Myron saw his family physician, Dr. Charles Fontenot, a general practitioner. After three months of nonresponsive treatment Doctor Fontenot suspected that Myron had injured a disc or had nerve root damage and referred Myron to Dr. Frank Angers, an orthopedic surgeon. After receiving the results of a myelogram and a CT scan performed on Myron, Doctor Angers concluded that there was a ninety percent probability that Myron did not have a disc injury. Doctor Angers recommended that Myron undergo a discogram, a procedure that would definitively rule out any disc problem. However, it was around this time that Myron's worker's compensation coverage was terminated and Myron could not afford the procedure. Also, around this time, Myron claimed that his left leg was becomming increasingly numb and would often give out if he stood for any extended length of time. (Myron later claimed that he broke his foot by falling off of his porch after his left leg "went numb".)
Myron's credibility and veracity were seriously put into question at the trial. Myron gave three depositions prior to the trial, the last one taken only two weeks before the trial. In his depositions, Myron stated that he had been in only one automobile accident since his back injury. In fact, Myron had been in three additional automobile accidents besides the one to which he admitted. However, on direct examination at the trial, Myron readily acknowledged these three additional accidents. When defense counsel properly tried to impeach Myron's testimony by introducing his prior inconsistent statements, Myron's counsel strenuously objected and erroneously argued that because Myron had not denied these three accidents in his trial testimony, any evidence of his prior denial should not be admissible. When further questioned as to why he did not reveal these accidents at the deposition, Myron claimed that his medication (Tylenol) had adversely affected his memory when he was deposed.
Myron testified that he has been unemployed since the accident and claimed that he was now totally and permanently disabled. However, the testimony of three insurance claims adjusters cast doubt on the veracity of Myron's statements. These adjusters represented the insureds in three of the four post-back injury auto accidents against whom Myron had made a claim. One adjuster stated that Myron had included as part of his damages a claim for current lost wages and Myron told another adjuster that he was currently a carpenter's assistant earning $7.00 per hour at a thirty-five to forty hour work week. Another adjuster testified that Myron claimed that he had never collected worker's compensation benefits. In fact, he was then receiving these payments from Bordelon's worker's compensation carrier. Additionally, two of Myron's neighbors testified that since Myron's April, 1984, back injury he had been seen building fences, digging ditches, playing baseball, working in his garden, changing a flat tire, cutting grass, painting his home and helping unload two hundred bales of hay weighing 45 lbs. each. Also, one neighbor who had testified similarly at Myron's worker's compensation hearing several months earlier, stated that since that hearing, she had not seen Myron doing anything outdoors.
Dr. James McDaniel, an orthopedic surgeon examined Myron twice on behalf of the defendant. The second examination occurred three weeks before the trial. Doctor McDaniel found marked discrepancies in Myron's performance of various tests that essentially tested the same areas. For example, Myron walked with a normal gait, fully able to support his body weight without any weakness. However, when Doctor McDaniel had Myron lie down and push his feet against Doctor McDaniel's hand, Myron could hardly exert any pressure with his left foot. When asked to repeat his walk, Myron again walked without any weakness. Also, even though Myron claimed to lack feeling in his left leg for over two years, and thus, used it less, the size of Myron's left leg was normal and equivalent to his right leg, and exhibited no muscle atrophy usually found after a few months of non-use. Doctor McDaniel also *645 testified that it was highly unusual for numbness to occur in the whole leg as a result of a back disc or nerve root damage. Instead, a pattern of numbness in certain areas of the leg would more normally develop. Doctor McDaniel felt that complete numbness would more likely result from a general circulation problem. Doctor McDaniel concluded that Myron had normal reflexes, good muscle tone and no objective signs of any orthopedic abnormality in his lower back.
The defendants presented strong evidence that, under Myron's version of events, the box he was carrying could not have caught onto the hand railing. The box was approximately thirty-two by twenty-eight inches square. When Myron demonstrated how he had held the box, the box bottom was measured to be forty-eight inches from the floor. As the handrail was thirty-six inches from the floor, a gap of twelve inches was left. Each step was five inches high. Even if Myron had been on the first step, there would have been seven inches between the box and the rail. Standing on the second step, the box in Myron's arms would have been past the allegedly defective area of the handrail. Additionally, the crack in the wood on the stair landing was not in the area on which Myron claimed to have stood.
In ruling against the plaintiffs, the Trial Judge held that the plaintiffs failed to prove by a preponderance of the evidence that the alleged defects were the cause in fact of the plaintiff's injury. The plaintiffs have appealed this ruling as manifest error.

STRICT LIABILITY
Louisiana Civil Code art. 2322 provides that:
The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.
In order to recover in strict liability under this article against the owner of a building, an injured person must prove that the building or its appurtenances posed an unreasonable risk of injury to others and that his damage occurred as a result of this risk. Inseco v. Cambridge Mut. Fire Ins. Co., 447 So.2d 606 (La.App. 3rd Cir.); writ denied, 449 So.2d 1349 (La.1984). The burden of proof which the plaintiff must meet in an action under Article 2322 is to show by a preponderance of the evidence that the defect in the building caused the complained of injury. Freeman v. Thomas, 472 So.2d 326 (La.App. 3rd Cir.1985).
The Trial Judge found that the plaintiffs failed to meet this burden of proof; namely, the plaintiffs did not prove that it was more probable than not that the handrail or the floor crack caused the plaintiff's injuries.
Causation is a question of fact to which the Trial Court's determinations are entitled to great weight and will not be disturbed absent manifest error. Ponder v. Groendyke Transport, Inc., 454 So.2d 823 (La.App. 3rd Cir.), writ denied, 457 So.2d 1195 and 457 So.2d 1198 (La.1984); Rivet v. State, through Dept. of Transp., 434 So.2d 436 (La.App. 3rd Cir. 1983).
After a review of the record, we find no manifest error in the Trial Judge's determination that the plaintiffs failed to meet their burden of proof. We must give deference to the Trial Judge who personally viewed the scene of the accident and who was in the best position to determine the credibility of all the witnesses and to evaluate the evidence. Sufficient evidence was presented which would indicate that neither alleged defect contributed to the plaintiff's fall. The plaintiff even suggested that the box could have been caught on the wooden parts bin located on the other side of the banister. Even assuming that the handrail did wobble after Myron fell from the stairs, this wobbling could just as easily have been caused by the plaintiff hitting it as he fell. Additionally, the strong evidence impeaching the veracity of the plaintiff regarding the severity of his injuries undoubtedly contributed to the Trial Judge's ruling. As we find no manifest error in the Trial Judge's determination, we affirm the District *646 Court's ruling. Costs on appeal are to be paid by the plaintiffs.
AFFIRMED.
NOTES
[*] Honorable Edmund M. Reggie, Judge, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.