671 So.2d 1148 (1996)
Norman DOUCET & Gerry Brown Doucet, Plaintiffs-Appellees,
v.
DOUG ASHY BUILDING MATERIALS, INC. & Bradley Hollier and Indiana Lumbermens Mutual Insurance Company, Defendants-Appellants.
No. 95-1159.
Court of Appeal of Louisiana, Third Circuit.
April 3, 1996.
*1150 Clyde Fontenot, Ville Platte, for Norman J. Doucet et al.
Michael Edward Parker, Lafayette, for Doug Ashy Building Materials, et al.
Before THIBODEAUX, SAUNDERS and AMY, JJ.
SAUNDERS, Judge.
Both plaintiffs and defendants appeal on the issue of quantum. Plaintiff, Norman Doucet, was rear-ended in a traffic accident. The question raised by both him and by defendants is whether the jury abused its discretion in the level of damages he was awarded. Meanwhile Doucet's spouse, Gerry Brown Doucet, disputes the jury's refusal to award her any damages for loss of consortium. We find favor in Mrs. Doucet's appeal and award her $7,500.00 for loss of consortium, but otherwise affirm.

FACTS
On August 3, 1994, just before 2:00 p.m., plaintiff, Norman Doucet, was traveling south on U.S. Highway 167 in his 1985 GMC pickup truck. When he slowed down for traffic ahead of him on the two lane highway, his vehicle was struck forcefully from the rear by a 1989 Isuzu pickup truck owned by defendant, Doug Ashy Building Materials, Inc., and driven by Bradley Hollier.
Liability having been conceded by defendants, the sole issue tried by the jury was quantum. Following a two day trial, the jury awarded plaintiff, Norman Doucet, damages in the following amounts, which total $119,607.32:

(A) Physical pain and suffering, loss of enjoyment of life (past and future) $25,000.00
(B) Mental anguish, emotional distress, inconvenience, and frustration (past and $ 4,000.00
future)
(C) Medical expenses
 (1) past $ 7,450.00
 (2) future $ 7,250.00
(D) Lost wages or earning capacity
 (1) past $14,157.32
 (2) future $60,000.00
(E) Disability -0-
(F) Property damages $ 1,750.00

Additionally, the jury declined to award plaintiff's spouse, Gerry Brown Doucet, any damages for loss of consortium.
On appeal, defendants assign five errors. They argue the following:
(1) The jury committed manifest error in awarding $25,000.00 in physical pain and suffering and $4,000.00 in mental pain and suffering.
(2) The jury committed manifest error in awarding plaintiff $60,000.00 in future lost wages.
(3) The trial judge erred in allowing plaintiff's economic expert to testify concerning plaintiff's future lost wages.
(4) The jury committed manifest error in awarding plaintiff $7,250.00 for future medical care.
(5) The jury committed manifest error in awarding plaintiff $1,750.00 in property damage.
Plaintiffs answered defendants' appeal. Mr. Doucet argues that the jury should have awarded him greater damages. Mrs. Doucet *1151 seeks loss of consortium, a claim which the jury refused.
We address each of the awards in turn.

GENERAL DAMAGES
By their first assigned error, defendants maintain that the jury erred in awarding plaintiff $25,000.00 for past and future physical pain and suffering and loss of enjoyment of life, and $4,000.00 for past and future mental anguish, emotional distress, inconvenience and frustration.
Our "initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the `much discretion' of the trier of fact." Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, ___ U.S.___ 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Reck v. Stevens, 373 So.2d 498, 501 (La.1979).
It is only after articulated analysis of the facts discloses an abuse of discretion that the award may on appellate review be considered either excessive or insufficient. Reck, 373 So.2d 498. Absent such an initial determination, as a reviewing court, we should not disturb the trier's award. Id.
Defendants maintain that Mr. Doucet's injuries were not so severe as to support his $25,000.00 and $4,000.00 awards. Their theory is that defendants should have been held accountable for no more than plaintiff's cervical soft tissue injury, which pasted no more than 4 months after the accident and had become completely resolved by the time of trial. In support of their position, they allude to several strands of evidence. First, they observe that the reporting state trooper, Barney Daigle, testified that Mr. Doucet, the occupant of the rear-ended vehicle, reported only minor injuries after the accident and declined immediate medical attention. Alternatively, they argue that these figures were excessive because plaintiff, by his own treating orthopedic surgeon Dr. Lionel Mayer's opinion, was 70% recovered by November 21, 1994; also, they point out that both Dr. Mayer and orthopedic surgeon Dr. Angela Mayeux were of the opinion that plaintiff had reached maximum medical improvement and was capable of returning to work before the date of trial. The foregoing evidence, according to defendants, establishes that the jury erred in the magnitude of its award.
Notwithstanding that each of these arguments has some support in the record, we do not find that the jury abused its much discretion in rendering its award. Defendants' arguments overlook equally plausible evidence that plaintiff sustained, in addition to the neck injuries, back injuries which flowed from the accident. Both plaintiff and Dr. Thomas Fontenot, his long-time physician, testified that Mr. Doucet never complained of back pain before the date of his accident, but did afterwards. In view of this and other evidence contained in the record provided by individuals personally knowledgeable of Mr. Doucet's history, we conclude that the jury was not clearly wrong in concluding that not only Mr. Doucet's neck troubles but his back problems were attributable to the accident.
With respect to the duration of plaintiff's ailments, we again find no merit in defendants' argument that the jury was clearly wrong. The record contains the unequivocal testimony of Mr. Doucet and of others, each attesting to plaintiff's lingering pains and associated difficulties which persisted through the date of trial, April 17-18, 1995. Additionally, the medical evidence is clearly to the effect that an individual like Mr. Doucet possessing spondylolisthesis and spondylosis is more prone to injury and likely to require more time for recovery. Furthermore, while it is true, as defendants suggest and Mr. Doucet readily concedes, that his back pains did not become symptomatic until some four months after the accident, this fact did not require the jury to conclude that these back pains were not attributable to the accident. According to Dr. Thomas Fontenot, one of plaintiff's treating physicians, it was not altogether uncommon for Mr. Doucet's neck symptoms to spread to his back.
Defendants also argue, as they did at trial, that plaintiff's persistent back pains arose from a bathtub accident and not from the automobile accident. As he has throughout the course of these proceedings, plaintiff vehemently denies these accusations.
*1152 A tortfeasor is only liable for damages caused by his negligence, not from separate, independent, or intervening causes of damage, and it is the plaintiff who has the burden of proving that his injuries are in fact attributable to defendants. See Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (1972); Swan v. Vernon Mill. Co., 517 So.2d 1161 (La.App. 3 Cir.1987), writ denied, 521 So.2d 1171 (La. 1988). Causation is a question of fact which is entitled to great weight and will not be disturbed absent manifest error. Ardoin v. Abdalla, 525 So.2d 642 (La.App. 3 Cir.1988).
While Mr. Doucet readily admits (as he did at trial) that he did in fact have such a fall, he denies that this "minor" accident had any bearing on his present state. The jury chose to accept Mr. Doucet's account over defendants', and we can detect no clear error for its doing so.
Having determined that the jury did not err in finding that plaintiff in fact injured his back and in attributing his back problems to the accident, we turn to the question raised by both Mr. Doucet and by defendants, whether the jury abused its discretion in the level of its awards. Defendants suggest that the awards of $25,000.00 and $4,000.00 were abusively high, with Mr. Doucet weighing on the side that is was too low.
We have reviewed the evidence and find no abuse of the jury's discretion. Mr. Doucet lost an arm to an unrelated cause about ten years before the accident in question. The evidence shows that, whereas before the accident Mr. Doucet was able to overcome this fact to enjoy certain recreational activities, including gardening, hunting and fishing, following its occurrence he was unable to do so as frequently or derive as much pleasure from them. These losses, coupled with the fact that Mr. Doucet's recovery will be particularly onerous and protracted (possibly two years) owing to the fact Mr. Doucet, unlike persons with two arms who are similarly affected, will not have the luxury of resting affected parts of his body while performing essential daily activities (e.g., driving, brushing his teeth, and rising from bed); indeed, there was medical evidence to suggest that plaintiff's difficulties could persist as long as two years, and an abundance of evidence to suggest some continuing losses in the quality of life. At the same time, we cannot say that the jury erred on the low side. While the record supports a finding on the part of the jury that Mr. Doucet's pains could persist for one or two years or possibly even more, we can find nothing to suggest that the jury's award was abusively low, if for no other reason than the jury's awards may have been premised upon a justified belief that Mr. Doucet's back pains would dissipate over time.
Finding no abuse of discretion on the part of the jury in either direction, we accordingly affirm the jury's general damages awards of $25,000.00 and $4,000.00.

MEDICAL EXPENSES
The jury also awarded plaintiff $7,450.00 in past medical expenses and $7,250.00 for future medicals. While the figure for past medical expenses was clearly documented, defendants contend that the jury erred in awarding $7,250.00 for future medical care, maintaining that there was no testimony concerning the amount of care plaintiff would need in the future.
Defendants concede that there was testimony to the effect that plaintiff was in need of additional care, but contend that because no evidence was introduced as to the cost of this care, the jury's award, based upon no evidence of a precise dollar amount, should not be permitted to stand. Plaintiff's response is that because the medical evidence suggested that plaintiff would undoubtedly have to see a physiatrist in Alexandria and probably require physical therapy well into the future, "the jury had plenty of evidence in which to rely on, to set future medicals at $7,250.00."
Like any other damages, future medical expenses must be established with some degree of certainty. The plaintiff must establish that it is more probable than not that these expenses will be incurred. Veazey v. State Farm Mutual Automobile Insurance Co., 587 So.2d 5 (La.App. 3rd Cir.1991); Pitts v. Bailes, 551 So.2d 1363 (La.App. 3rd Cir.1989), writ denied, 553 *1153 So.2d 860 (La.1989), 556 So.2d 1262 (La. 1990); Morris v. Highlands Insurance Co., 525 So.2d 125 (La.App. 3rd Cir.1988).
Devall v. Begnaud, 617 So.2d 1286, 1290 (La.App. 3 Cir.1993).
The question raised by this appeal is whether, as defendants suggest, plaintiff was required to present medical testimony setting out a more detailed estimate of Mr. Doucet's future medical care costs. As a legal proposition, we decline to follow such a strict rule:
When the record establishes that future medical expenses will be necessary and inevitable, the court should not reject an award of future medical expenses on the basis that the record does not provide the exact value of the necessary expenses, if the court can examine the record and determine from evidence of past medical expenses and other evidence a minimum amount that reasonable minds could not disagree will be required. La.Code of Civ. Proc. art. 2164.
Stiles v. K Mart Corp., 597 So.2d 1012, 1013 (La.1992).
In rendering its award, the jury had the benefit of plaintiff's past medical expenses, as well as testimony indicating that he would have to continue undergoing treatment for a considerable period. Among the past medical expenses, plaintiff's physical therapy bills alone totaled $3,700.00 for 6 months, and the rehabilitation doctor to whom plaintiff would be referred had charged $180.00 per visit. Thus, it would appear that, given plaintiff's prognosis and past medical expenses, $7,250.00 represents a minimum amount for future medical expenses, one over which reasonable minds could not differ in view of Mr. Doucet's particular needs. Accordingly, the trial court's award for future medical expenses is affirmed.

LOST WAGES
The jury also awarded past lost wages or earning capacity of $14,157.32 and $60,000.00 in future like damages.
Defendants' appeal is limited to the $60,000.00 awarded in future lost wages. Defendants contend that the jury's erroneously high award is attributable to the expert testimony of Professor Donald W. Cornwell, a consulting economist and former professor at USL, which should not have been admitted because "there was no foundation laid in earlier testimony by any other physicians which would justify the Court allowing the jury to hear an economist testify concerning future lost wages." Their position is that all the medical doctors indicated that Mr. Doucet was capable of returning to work by the time of trial, "with the only exception of Dr. Dupre, who indicated that he could return to work after four to eight week work-hardening program."
We find no merit in defendants' position. While it may be true that the testimony of most of the medical doctors is that plaintiff should have been allowed to return to work, most who did were of the opinion that he should do so only on an experimental basis. In other words, their conclusions were not unconditional, but premised upon Mr. Doucet's being afforded that luxury.
In fact, plaintiff was not permitted to return to work, even on an experimental basis. As the record clearly demonstrates, plaintiff's employer refused to allow him to return to work even on an experimental basis unless its physician, Dr. Dupre, examined Mr. Doucet and concluded that he was fit to do so. When Dr. Dupre examined Mr. Doucet, however, he explicitly declined to grant such permission, on the basis of Mr. Doucet's health. Thus the jury, presented with credible evidence offered by a third party with nothing to gain by the outcome of these proceedings, was convinced that plaintiff's accident attributable work stoppage vastly exceeded defendants' estimate. We cannot say that the jury manifestly erred in doing so. While it is true that Dr. Dupre testified that it was his experience that typical patients placed in work-hardening or rehabilitation programs are released within 4 to 8 weeks, he expressly declined to guess how long it would be before plaintiff could complete such a program. Indeed, taking into account that plaintiff had only one arm, Dr. Dupre intimated that this individual's rehabilitation would take longer than it would for his usual patient, as plaintiff had no alternate *1154 arm or connective back and neck tissue to use while performing and attending to his essential daily activities during his recovery, thus offering no respite to his affected injuries during the long rehabilitative process.
Thus convinced that the jury did not err in concluding that plaintiff's healing process would be more lengthy than the abbreviated period espoused by defendants, we turn to the conflicting arguments waged by the parties as to whether the jury abused its discretion, either way, in awarding Mr. Doucet $60,000.00 in future lost wages.
In Professor Cornwell's opinion, plaintiff had a work life expectancy following the accident of 12.76 years. Multiplying Mr. Doucet's annual salary of $20,224.74 per year by this figure and after taking into account an approximation of 4% inflation and retirement benefits earning 7.4%, Dr. Cornwell estimated that plaintiff's lost future wages and benefits were approximately $235,877.58. Dr. Cornwell was forthright in conditioning his opinion on plaintiff's being permanently disabled and in agreeing that Mr. Doucet was entitled to no future lost wages if, as defendants suggested, he could return to work. On cross-examination, defendants did not contest any of the economic numbers underlying Dr. Cornwell's forecasts, choosing only to question the duration of Mr. Doucet's incapacity. Defendants presented no expert evidence of their own.
The record is uncontradicted insofar as it demonstrates that, as a beneficiary of the DROP program, plaintiff's employer would match his annual salary for a maximum of three years, effectively doubling plaintiff's salary from June 1995 until he retired or three years later, whichever came first. Thus faced with this and all of the other evidence before it, including Dr. Dupre's testimony, the jury apparently concluded that plaintiff could not return for another year and one-half or so.
Defendants suggest that the jury was overwhelmed by the evidence before it, but under the circumstances, we cannot agree that the jury's award of $60,000.00 in future lost wages was abusive in either direction. The most likely inference of the jury's award of $60,000.00 from the record before us is not that the jury misunderstood the duration of plaintiff's future losses, but that it took into account that plaintiff's future losses would amount to 1 ½ years of earnings plus DROP benefits of an equal sum. Given the fact that Mr. Doucet's election to opt into the state's DROP program is irrevocable, La.R.S. 11:451, we can discern no error in holding defendants' accountable not only for plaintiff's lost wages, but additionally for the contributions to his DROP program which likewise have been lost due to their imputable negligence.

PROPERTY DAMAGES
Next, defendants maintain that the jury erred in awarding plaintiff $1,750.00 in property damages. They argue that the only part adversely affected in plaintiff's automobile transmission was a sprag, thus requiring reduction of the property damage award by $322.41.
Again we cannot say that the jury erred in refusing to make this deduction, as the mechanic testified that all of the repairs, including those disputed by defendants, were required to restore the vehicle's transmission to the same good-working order plaintiff enjoyed before the accident occurred.

MRS. DOUCET'S LOSS OF CONSORTIUM
While plaintiff, Norman Joseph Doucet, was directly injured in the accident, his wife, Gerry, complains that the jury neglected her losses of consortium in failing to award her any damages at all. She believes damages in the range of $15,000.00 to $20,000.00 would be the minimum it could have reasonably awarded under the circumstances, taking into account her age of 48 years and the accident's diminution in the couple's marital relations, to say nothing of her now having to run the household alone.
The loss of consortium includes such pecuniary elements as loss of services, and such non-pecuniary components as love, companionship, affection, society, sexual relations, comfort and solace. Jinks v. *1155 Wright, 520 So.2d 792 (La.App. 3 Cir. 1987); Lonthier v. Northwest Ins. Co., 497 So.2d 774 (La.App. 3 Cir.1986).
Jaffarzad v. Jones Truck Lines, Inc., 561 So.2d 144, 158 (La.App. 3 Cir.), writ denied, 565 So.2d 450 (La.1990). As with general damage awards, the factfinder is accorded much discretion in its deliberations with respect to its awards for loss of consortium. Horton v. McCrary, 620 So.2d 918 (La.App. 3 Cir.1993).
Having reviewed the record, we believe that Mrs. Doucet makes a convincing case that the jury erred in awarding her no relief at all. The record shows that the accident precluded the couple's ability to enjoy recreational camping and fishing together and effectuated a drop in intimacy from twice or so weekly to once monthly. The record also clearly establishes that whereas before the accident, Mr. Doucet handled most of the outside maintenance of the couple's two residences, including gardening, mowing the lawn, and attending to poultry, the accident left Mr. Doucet unable to carry his share of the load, which the record, without contradiction, demonstrates was shifted mostly to Mrs. Doucet.
There being no evidence to support the jury's failure to award loss of consortium, we hold that the jury abused its much discretion and render Ms. Doucet an award for loss of consortium of $7,500.00, the minimum amount that is reasonable under the circumstances. Jaffarzad, 561 So.2d 144.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed in all respects, except to award Mrs. Gerry Doucet $7,500.00 in loss of consortium, plus interest. Defendants to bear all costs.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
AMY, J., concurs.