705 So.2d 1137 (1997)
Kimberly McCARTHY, et al., Plaintiff-Appellant,
v.
FIRST FINANCIAL INSURANCE, et al., Defendant-Appellee.
No. 30015-CA.
Court of Appeal of Louisiana, Second Circuit.
December 10, 1997.
*1138 Neblett, Beard & Arsenault by Galen W. "Allen" McBride, Michael S. Koch, Alexandria, for Plaintiff-Appellant.
Stamey, Long & Keiser by Joe Stamey, for Defendant-Appellee.
Before MARVIN, C.J., and STEWART and CARAWAY, JJ.
CARAWAY, Judge.
Plaintiff, Kimberly McCarthy, appeals a judgment from district court dismissing her claim for damages arising out of an accident in which she fell from the steps outside the door of her mobile home and sustained injuries to her right leg and foot. Finding no manifest error in the ruling of the trial court, we affirm.

*1139 Facts and Procedural Background

On the evening of April 17, 1994, the plaintiff stepped outside the mobile home where she resided to check on her children. The trailer was located at a trailer park called the Downs Trailer Park, which was owned by the Lucky Family Trust and managed by Robert Sessions. When the plaintiff stepped from the doorway of her trailer, which was approximately 2½ to 3 feet above the ground, onto the top of the wooden steps, which were also owned by the trailer park, she alleges that the steps moved forward and caused her to fall down the steps. Although the steps rested on concrete next to the trailer and had a brace device which allowed them to be locked into an open position, they were not fastened to the trailer. There was testimony at trial giving varying estimates for the weight of the steps from twenty-five to sixty pounds.
The steps in question were placed at the site several months earlier by the plaintiff's boyfriend, Ralph Lucas, who had taken the steps from a vacant nearby trailer as a "self-help" measure to replace a set of steps in an allegedly worse condition. Because the steps had been in place for some time, the plaintiff had used the steps many times in the months preceding the accident.
The fall broke the plaintiff's her right ankle. The injury required an open reduction and the insertion of numerous screws which had to be surgically removed one year later. Plaintiff also alleges a five percent permanent disability to her lower extremity, unsightly surgical scars and recurring pain. The plaintiff sued the trailer park, Sessions, the Lucky Family Trust and its insurer, First Financial Insurance Company (hereinafter, collectively "defendants") to recover damages for the injuries she sustained alleging liability based upon negligence and strict liability under La.Civil Code Articles 2317 or 2322.
Following trial of the matter, the trial court rendered a brief opinion stating that the plaintiffs did not prove their case. Elaborating on its findings, the court stated that the familiarity of the steps to the plaintiff and the tenor and credibility of the witnesses had led the court to believe that the plaintiff was simply inattentive at the time of the fall, which could have been caused by any number of factors.
On appeal, plaintiff raises the following assignments of error:
1. The trial court erred in finding victim fault despite a complete lack of evidence thereof and a lack of grounds from which to draw an inference of victim fault.
2. The trial court erred in imposing upon the plaintiff an affirmative obligation to purchase "world class steps," thereby erroneously subsuming the defendants' negligent conduct into the plaintiff's duty to look out for her own safety.
3. The trial court committed legal error in focusing improperly upon the relationship between McCarthy and the Downs Trailer Park vis-à-vis the trailer park's agreement to allow the McCarthy's to reside in the trailer rent free until the trailer was repaired.
4. The trial court committed manifest error in failing to find that Robert Sessions, acting in the course and scope of his employment with the Downs Trailer Park, failed to act on his knowledge that the lightweight, unattached stepladder from which plaintiff fell was an unreasonably dangerous means of accessing her trailer.
5. The trial court committed manifest error in not finding that the steps themselves constituted an unreasonably dangerous instrumentality in the use to which they were put and/or constituted a "ruin" to the trailer pursuant to C.C. art. 2322.

Discussion
It is well-settled that a court of appeal will not overturn a factual finding of the trial court absent manifest error. This is because the trial court is in the singular position of weighing testimonial evidence based upon its first-hand observations of the tone and demeanor of the witnesses. Rosell v. ESCO, 549 So.2d 840 (La.1989).
To recover under La.C.C. art. 2317, a plaintiff must prove that he was injured by a thing which was in the care or custody of the defendant and that such thing was defective. Loescher v. Parr, 324 So.2d 441 (La. *1140 1975); Celestine v. Union Oil Co. of California, 94-C-1868 (La. 4/10/95), 652 So.2d 1299. In order to recover in strict liability under Civil Code article 2322 against the owner of a building, an injured person must prove that the building or its appurtenances posed an unreasonable risk of injury to others and that his damage occurred as a result of this risk. Entrevia v. Hood, 427 So.2d 1146 (1983); Dorthlon v. St. Francis Medical Center, Inc., 28,426 (La.App.2d Cir. 6/26/96), 677 So.2d 654; Inseco v. Cambridge Mut. Fire Ins. Co., 447 So.2d 606 (La.App. 3d Cir.), writ denied, 449 So.2d 1349 (La.1984).
The burden of proof which the plaintiff must meet in an action under Article 2322 is to show by a preponderance of the evidence that the defect in the building caused the complained of injury. Dorthlon v. St. Francis Medical Center, Inc., supra; Freeman v. Thomas, 472 So.2d 326 (La.App. 3d Cir.1985). In this instance, the trial judge found that the plaintiffs failed to meet this burden of proof; namely, the plaintiffs did not prove that it was more probable than not that the steps caused the plaintiff's injuries. Causation is a question of fact to which the trial court's determinations are entitled to great weight and will not be disturbed absent manifest error. Smith v. State, Through Dept. of Transportation and Development, 412 So.2d 685 (La.App. 2d Cir.1982), writ denied, 413 So.2d 907 (La.1982).
In Ardoin v. Abdalla, 525 So.2d 642 (La. App. 3d Cir.1988), the court found no manifest error in the trial judge's determination that the plaintiffs failed to meet their burden of proof of showing causation in a case where the plaintiff sustained injuries as a result of falling from wooden stairs. The plaintiff alleged that a wobbly hand railing and crack in the wooden landing of the stairs had caused him to fall as he attempted to bring a box down the stairs. The court of appeal noted that it must give deference to the trial judge who personally viewed the scene of the accident and who was in the best position to determine the credibility of all the witnesses and to evaluate the evidence. Sufficient evidence was presented which would indicate that neither alleged defect, the handrail or the crack in the landing, contributed to the plaintiff's fall. Additionally, the court noted that there was strong evidence impeaching the veracity of the plaintiff.
In the case at bar, plaintiff's argument is simply that there was nothing in the evidence from which the court could draw the inference that the plaintiff was inattentive and her inattentiveness was the cause of the accident. We disagree. In response to a question inquiring whether the steps were touching the trailer when she stepped outside, the plaintiff initially testified that she did not look where she was stepping. Later, she changed her testimony on that issue stating that she looked at her feet, but not the location of the steps.
The trial court stated that based upon the tenor and credibility of the witnesses, he believed that the plaintiff was simply inattentive and this was the cause of the fall. Although, as a court of appeal, we obviously cannot observe the demeanor and tone of a witness to make such a credibility evaluation, we can recognize testimony from a record that the court might have viewed as inconsistent or as tending to impeach a witnesses' version of the event. In this regard, we note that the plaintiff's credibility was called into question when the defense introduced medical records indicating that the plaintiff had previously reported to her physician that she was addicted to Soma, the drug, which she had denied at trial. The plaintiff's credibility was also called into question regarding her responses to whether she had any accidents after the injury.
The evidence also conflicted regarding the issue of the stability of the steps and required a credibility evaluation by the trial judge. Although the plaintiff and her boyfriend claimed that they complained repeatedly about the condition of the steps, neither the plaintiff's sister, Gladys Tinsley, nor her neighbor and friend, Rose Carlton, both of whom frequently visited the plaintiff's trailer, could testify that they ever heard the plaintiff complain to them or anyone else about the condition of the steps. Robert Sessions denied that he ever received a complaint from plaintiff or Lucas regarding the steps.
*1141 On the other hand, both Mr. Sessions and Ed Felan, who assisted Sessions with maintenance, testified regarding the design of the steps and how they rested on the concrete slab. Both testified that they had used the steps themselves to install a stove in the mobile home a short time before the accident, and the steps were stable. Exactly how long before the accident this installation occurred is disputed by the plaintiff, but Mr. Sessions estimated about one month. Consequently, other than the plaintiff and Lucas, only Ms. Tinsley testified that the steps "kind of moved" whenever you walked up them, but her testimony was impeached by her previous statement at a deposition that she could not recall the condition of the steps.
Perhaps most damaging to the plaintiffs' position, however, is the lack of physical or objective evidence showing the alleged instability of the steps. The photographs of steps introduced into evidence, while revealing the construction and the varied conditions of the several different sets of steps, do not demonstrate that the steps were unstable or would wobble or shift if stepped on. Hence, we cannot rule that the trial judge was manifestly erroneous in concluding from the conflicting testimony, that the plaintiff, who admitted that she was not looking at the steps when she stepped down, was simply inattentive and did not prove her case.
Plaintiff hastens to point out that the steps were not attached to the trailer or anchored and did not have a handrail. Though these "facts" about the steps were undisputed and go to the issue of an unreasonably dangerous risk of harm, which we address next, they do not so strongly infer that the steps shifted in this instance and were in fact the cause of the accident.
Even if we were to decide that the steps were in fact the cause of the accident, this finding would not automatically result in liability absent a finding that the steps posed an unreasonable risk of harm. In Entrevia v. Hood, 427 So.2d 1146 (La.1983), the Supreme Court stated:
"The requirement that an injured person, in order to recover under Article 2317 or 2322 must prove that the risk from which his damage resulted posed an unreasonable risk of harm, places a limitation on a building owner's strict liability. He cannot be held responsible for all injuries resulting from any risk posed by his building, only those caused by an unreasonable risk of harm to others."

Id. at 1149 (emphasis added). Whether under a theory of strict liability or under a negligence theory for the assessment of the defendant's duty, the steps must be shown to pose an unreasonable risk of harm.[1]
In Dorthlon v. St. Francis Medical Center, Inc., supra, a hospital visitor sued the hospital alleging strict liability and negligence as a result of injuries she sustained when she fell due to a mat at the hospital's entrance. The plaintiff argued that the mat created an unreasonable risk of harm or was defective as a "trip hazard," in that it extended beyond the entranceway and, because of the slope in the floor, would curl up on the end. Id. at 657. This court found no manifest error in the jury's conclusion that the mat did not create an unreasonable risk of harm.
In a case factually analogous to the case at bar, in Townsend v. Westinghouse Elevator Corp. 25,966 (La.App.2d Cir. 8/17/94), 641 So.2d 1022, writ denied, 94-2371 (La. 11/27/94), 646 So.2d 403, we held that an elevator that dropped slightly when the plaintiff stepped on it, causing her to stumble and sustain serious back injuries, did not pose an unreasonable risk of harm to the plaintiff. The plaintiff failed to prove that the elevator shifted more than industry standards allowed. In reaching our conclusion that the elevator did not pose an unreasonable risk of the harm encountered by the plaintiff, we weighed the very low probability of such an accident and specifically noted that a party who pauses briefly before entering *1142 an elevator and quickly evaluates the surroundings will likely avoid such incidents entirely.
The activities of a defendant for which he may be held liable without acting negligently are to be determined after a study of the law and customs, a balancing of claims and interests, a weighing of the risk of harm against the magnitude and likelihood of harm, and a consideration of individual and societal obligations. Entrevia v. Hood, supra; Langlois v. Allied Chemical Corporation, 258 La. 1067, 1084, 249 So.2d 133, 140 (1971); Lewis v. Oubre, 461 So.2d 523 (La. App. 3d Cir.1984). Thus, in determining whether the risk of harm associated with an object is unreasonable, the utility of the object must be balanced against the risk and magnitude of harm posed. Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980).
At trial, plaintiff introduced no evidence comparing the disputed steps with other steps employed for mobile homes. While defendants' witnesses were cross-examined regarding the benefits of concrete steps and steps with hand rails, no evidence from experts or safety code standards was introduced which demonstrated by comparison with alternative steps that these portable steps were unreasonably dangerous. The record does contain testimony presented for the defendants by Ed Felan, a part-time maintenance worker for the trailer park, who had worked on mobile homes for eighteen years. Felan's testimony indicates that the subject wooden steps are typically in use for access into mobile homes although concrete steps are also utilized. With the lack of evidence on this subject of defectiveness, plaintiff nevertheless argues that the defect in the steps can be inferred from the fact of the accident, suggesting that these steps, even when situated on concrete and completely sturdy, should not be used for entry into mobile homes.
Regarding the lack of hand rails, again the record contains very little discussion of this issue. Since the entry door swings outward from the mobile home and the upward span of the four steps is in close proximity to the door and the side of the house, we cannot simply infer from this record the absolute necessity for a railing or that a railing would have prevented plaintiff's fall.
On the record before us, we are not convinced that the increased cost and inconvenience of permanent steps is warranted when balanced against the advantages of easily removable wooden steps. Mr. Sessions testified that he removed the wooden steps from vacant trailers to keep children from attempting to enter those trailers. In view of the apparent widespread use of easily removable wooden steps and the temporary situs of mobile homes, we believe that requiring trailer park owners to supply concrete steps at mobile home locations would pose too great of an economic burden, as well as prove impractical when compared to the risk of injury posed by portable wooden steps. We conclude, therefore, that these steps were not shown to pose an unreasonable risk of harm to the plaintiff.

Conclusion
Despite other evaluations of the facts and other inferences argued by the plaintiff, the manifest error rule requires us to affirm the trial court when its findings and evaluations are supported by a reasonable factual basis. In this case, the trial court's ruling is supported by the record and is affirmed. Costs of this appeal are assessed to the plaintiff.
AFFIRMED.
NOTES
[1] A finding that the defendant is not strictly liable under Civil Code articles 2317 or 2322 also precludes a finding of negligence, inasmuch as the negligence claim simply adds the requirement that the defendant knew or should have known of the unreasonable risk posed by the thing or building. Dorthlon v. St. Francis Medical Center, Inc., supra; Pardee v. Natchitoches Parish Police Jury, 600 So.2d 867 (La.App. 3d Cir. 1992).